**UNITED STATES of America,**
Plaintiff,

v.

**Israel M. BOSK, Lincoln National Life Insurance Company, Mutual Life Insurance Company of New York, Josephine Bosk, Richard M. Karp, Daniel Golden,**
Defendants.

Civ. No. 9479–M.

United States District Court
S. D. Florida,
Miami Division.

Feb. 1, 1960.

E. Coleman Madsen, U. S. Atty., Miami, Fla., George Elias, Jr., Tax Division, Dept. of Justice, Washington, D. C., for plaintiff.

Edward F. Mitchell, Scott, McCarthry, Preston, Steel & Gilleland, Dixon, De-Jarnette, Bradford, George E. Patterson, Jr., Williams, McKay & Kimbrell, James A. Dixon, Miami, Fla., for defendants.

WYCHE, District Judge. (Sitting by Designation)

This case came on for hearing before the Court without a jury on January 18, 1960. Plaintiff, United States, was represented by E. Coleman Madsen, Esq., United States Attorney, and George Elias, Jr., Esq., Tax Division, Department of Justice. The defendants were represented by Edward F. Mitchell, Esq., George E. Patterson, Jr., Esq., and James A. Dixon, Esq., all of Miami, Florida.

The Court having considered the pleadings, evidence and testimony of the parties, and being fully advised in the premises, now finds the facts and states its conclusions of law as follows:

Findings of Fact

1. This action was properly authorized by the Commissioner of Internal Revenue and was brought under the direction of the Attorney General of the United States.

2. The defendant, Israel M. Bosk, (hereinafter referred to as Bosk), at the time of this suit, was a resident of Miami Beach, Florida. Each of the defendants, Lincoln National Life Insurance Company (hereinafter referred to as Lincoln) and Mutual Life Insurance Company of New York (hereinafter referred to as Mutual), is authorized to do business within the state of Florida.

3. Bosk owed income taxes, penalties and interest for the years 1944 and 1945 in the amounts of $5,264.50 and $5,184.-33, respectively, which were properly and timely assessed on September 17, 1947, and upon which proper notice and demand for payment thereof were made by the Collector of Internal Revenue.

4. Commencing with the month of April, 1948, to and including the month of May, 1951, Bosk made monthly installment payments on his 1944 tax liability in the total amount of $1,758.78. Notwithstanding the proper notice and demand for payment, no part of the balance of $3,505.72 for 1944 and no part of the liability of 1945 in the amount of $5,184.33, or a total amount of $8,690.05 had been paid.

5. Within six years from the date of assessments, Bosk filed on June 9, 1952, Treasury Form 900, Tax Collection Waiver, with the Commissioner of Internal Revenue, extending the period during which collection of the balance of the 1944 income tax, penalty and interest assessment could be made, either by a proceeding in Court or by distraint to and including December 31, 1957 and for the year 1945 to and including December 31, 1958.

6. On August 15, 1952, Bosk filed Treasury Form 656, Offer in Compromise, whereby he offered to settle his entire outstanding liability for the years 1944 and 1945 for $1,000, which amount was subsequently raised to $2,000.

7. According to the terms of said offer of August 14, 1952, the taxpayer, in making the offer, as a part consideration thereof expressly waives:

"The benefit of any statute of limitations applicable to the assessment and/or collection of the liability sought to be compromised, and agrees to the suspension of the running of the statutory period of limitations on assessment and/or collection for the period during which this offer is pending and for one year thereafter."

8. On October 7, 1954, Bosk was notified by the Commissioner that following careful consideration of the offer to com-

promise the unpaid taxes, penalties and interest liabilities for the years 1944 and 1945, the offer was rejected.

9. Thereafter, Bosk filed Treasury Form 656–C, Offer in Compromise, dated January 15, 1957, and received by the Commissioner on February 26, 1957, whereby he again offered to compromise his liability for the years 1944 and 1945 for the amount of $2,000 to be paid in monthly installments.

10. According to the terms of this second offer, the taxpayer, in partial consideration for making the offer, expressly waived:

"The benefit of any statute of limitations applicable to the assessment and/or collection of the liability sought to be compromised, and agrees to the suspension of the running of the statutory period of limitations on assessments and/or collection for the period during which this offer is pending, or the period during which any installment remains unpaid, and for one year thereafter."

11. On July 18, 1957, Bosk withdrew the offer filed February 26, 1957, which had been submitted to compromise the liability for the years 1944 and 1945.

12. The defendants, Lincoln and Mutual, are the insurers of certain policies of insurance issued to and upon the life of Bosk, and upon which policies Bosk had retained the right at all times to change the beneficiaries thereof.

13. The policies, cash surrender values, and net value thereof are as follows:

| Policies | Date | Cash Surrender Value | Indebtedness | Net Value |
|----------|------|---------------------|--------------|-----------|
| Lincoln: | | | | |
| J1067601 | 9/17/59 | $ 971.60 | $553.25 | $418.35 |
| J1067602 | 9/17/59 | 971.60 | 553.25 | 418.35 |
| J1110444* | 3/28/59 | 1,568.90 | 933.80 | 635.10 |

*In addition, this policy has a current dividend of $52.70 and the cash value of additions is $49.15.

| Policies | Date | Cash Surrender Value | Indebtedness | Net Value |
|----------|------|---------------------|--------------|-----------|
| Mutual: | | | | |
| 763 80 30–S | 1/18/60 | $1,414.44 | $698.19 | $ 716.25 |
| 763 80 31–S | 1/18/60 | 1,414.44 | 322.23 | 1,092.21 |
| 776 17 50 | 1/18/60 | 1,288.10 | 391.63 | 896.47 |

14. Notice of tax liens were served by the United States upon Lincoln on February 24, 1958, and upon Mutual on February 10, 1958.

15. Prior to February 24, 1958, Lincoln received a letter from Bosk requesting a change of beneficiaries upon all policies to Jo Golden Bosk as primary beneficiary and Richard M. Karp as contingent beneficiary. Lincoln forwarded to Bosk its standard forms for effectuating a change of beneficiaries but such forms have never been returned to Lincoln. Subsequent to September 2, 1958 a similar letter of request was received by Lincoln, but no standard forms for change of beneficiary were received.

16. This action was filed on September 28, 1959.

## Opinion and Conclusions of Law

This suit was instituted by the plaintiff to obtain a judgment for unpaid income taxes, penalties and interest against defendant Israel M. Bosk for the years 1944 and 1945, and to enforce its tax liens against the cash surrender value of six insurance policies on the life of defendant, Israel M. Bosk, in partial satisfaction of his outstanding tax liabilities for said years. The facts stated in detail in the Findings of Fact need not be repeated here. Those necessary to any understanding of the case are as follows:

Defendant—taxpayer Bosk owed income taxes, penalties and interest for the years 1944 and 1945, which were properly and timely assessed on September 17, 1947. During the period of April, 1948, through May, 1951, Bosk paid monthly installments in partial satisfaction of his 1944 liability. The balance of the 1944 liability and the entire liability for 1945, in the total amount of $8,690.05, remained unpaid notwithstanding proper notices and demands therefor made by the Collector of Internal Revenue upon Bosk.

On June 9, 1952, Bosk filed Treasury Form 900, Tax Collection Waiver, with the Commissioner of Internal Revenue, extending the period during which collection of the balance of the 1944 liability could be made, either by distraint or a proceeding in court, to December 31, 1957, and for the year 1945 to December 31, 1958. Because of Bosk's asserted inability to pay, on August 14, 1952, he filed an offer to compromise his entire outstanding liability for the years 1944 and 1945. By the terms of the offer, he waived the benefit of the statute of limitations applicable to collections, and agreed to the suspension of the running of the statutory period of limitations on collection for the period during which the offer was pending and for one year thereafter. This offer was rejected on October 7, 1954. Thereafter, Bosk, on February 26, 1957, again offered to compromise his liability for the years 1944 and 1945 for a specified amount to be paid in monthly installments. By the terms of the offer, he again agreed to a waiver and extension of the limitations period on collection for the period the offer was outstanding and for one year thereafter. Prior to final action on this offer, Bosk, on July 18, 1957, withdrew his offer of February 26, 1957.

Defendant Bosk holds life insurance policies in the defendants, Lincoln National Life Insurance Company (hereinafter referred to as Lincoln) and the Mutual Life Insurance Company of New York (hereinafter referred to as Mutual), which policies are in his possession. Notices of tax liens were served by plaintiff upon Lincoln on February 24, 1958, and upon Mutual on February 10, 1958. These policies had substantial cash surrender values at the time of the institution of this action. All the policies were payable at Bosk's death to his wife as beneficiary but each policy reserved to him the right to change the beneficiary at any time. Prior and subsequent to February 24, 1958, Lincoln received letters from Bosk requesting that the beneficiaries on all policies be his wife as primary beneficiary, and Richard M. Karp, rather than Daniel Golden, as contingent beneficiary. Pursuant thereto, Lincoln forwarded to Bosk its standard forms for effectuating a change of beneficiaries, but no such completed forms were returned to Lincoln.

This action was instituted on September 28, 1959, to obtain a judgment for the unpaid tax liabilities owed by Bosk for the years 1944 and 1945, and to enforce the liens of the unpaid federal taxes against Bosk's interest in the six insurance policies; and Bosk's wife and other potential beneficiaries are named as parties to the action along with Bosk and the two insurance companies. It is conceded that the insurance companies are authorized to do business in the State of Florida. Personal service of process was had on all defendants and all parties are within the jurisdiction of this Court.

The two basic questions presented in this action are: (1) Whether this suit for collection of unpaid taxes, penalties and interest for the years 1944 and 1945

is timely? (2) If so, can the Government have its liens for unpaid taxes for those years satisfied, as much as possible, out of the cash surrender values of the policies taken out by Bosk on his life? Both questions should be answered in the affirmative.

■ With regard to the timeliness of this action, under the provisions of the Internal Revenue Code, an action for collection of unpaid liabilities must be commenced within six years following assessment, unless the statute of limitations has been extended by an agreement in writing prior to the expiration of the preceding period. Such period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon. Sec. 276(c), Internal Revenue Code of 1939 (26 U.S.C. 1952 ed., § 276(c)). That such extension agreements have been made as required and this action timely commenced is clearly shown. A brief chronology is as follows: The assessments for 1944 and 1945 were made on September 17, 1947. Within six years thereafter, on June 9, 1952, Bosk filed tax collection waivers extending the limitations period on collection for the years 1944 and 1945 to and including December 31, 1957, and December 31, 1958, respectively. On August 14, 1952, within the extended statutory periods, Bosk filed an offer to compromise his liabilities for 1944 and 1945, wherein he waived the statute of limitations on collections and agreed to the suspension of the running of the statutory period during the time the offer was pending and for one year thereafter. The offer was rejected on October 7, 1954, approximately 25¾ months later. The statute of limitations for collection on each year's liability was thus extended by 37¾ months (25¾ plus 12). Following submission of the second offer in compromise on February 26, 1957, and its withdrawal approximately 4¾ months later, on July 15, 1957, the statutory period for collection was extended for another 16¾ months (4¾ plus 12). Thus, within the originally extended statutory

periods for collection of the 1944 and 1945 liabilities up to December 31, 1957 and 1958, respectively, the submission of the offers suspended the running of the statute of limitations and the limitations period for each year's liability was extended for 54½ months (i. e., 37¾ months on the first offer, plus 16¾ months on the second offer), or a total of four years, six and one-half months. Consequently the statutory period for commencing a suit for collection for the year 1944 was extended from December 31, 1957, to July 15, 1962; and for the year 1945 from December 31, 1958, to July 15, 1963. This action then, was timely instituted on September 28, 1959.

■ Bosk however, contends that the waiver contained in the first offer was ineffectual because it was executed only by himself and not by the Commissioner and, consequently, the extension was not "agreed upon in writing by the Commissioner and the taxpayer," as required by the Internal Revenue Code. He further asserts that in any event the waivers contained in the offers are inoperative since the first was rejected and the second withdrawn. In rejecting similar contentions in Shambaugh v. Scofield, 132 F.2d 345, at page 347, the Court of Appeals for the Fifth Circuit held:

"The statute does not require that the 'agreement' shall be embodied in one writing, nor evidenced alone by the formal extension agreement tendered by the taxpayer nor does it prescribe the time within which the Commissioner's assent thereto must be evidenced. No particular formula of words is necessary. The sole requirement is that the agreement be 'in writing'. Any writing, formal or informal, if made for the purpose of evidencing the Commissioner's approval, and from which his approval may be gathered by reasonable inference, is sufficient. The statutory provision requiring a written agreement is for administrative purposes,—not to convert into a contract what is essentially a voluntary unilateral waiver of a defense by the taxpayer. In construing such waivers, the

intention of the parties is an important factor.

"The taxpayers intended, and all parties understood, that the waivers were submitted in aid, and as a part of, the taxpayers' efforts to effect a compromise adjustment of the tax, and that the purpose of the waivers was to suspend the running of the statute while the offers were under consideration. It was certainly not contemplated that while the taxpayers negotiated to better their position the statute should continue to run, so that even though the compromise offers were rejected collection of the tax would be barred by limitation.

"The compromise offers were considered on the merits and were rejected by letters signed by the Commissioner, stating in effect that 'careful consideration has been given the offer and supporting data.' These rejection letters relate to, and are to be considered in connection with, the offers which contained the waivers. They constitute presumptive proof of the Commissioner's agreement to the waivers, unless overcome by countervailing evidence, which is here lacking. * * *"

Here, the offer of August 14, 1952, was certainly considered on the merits and rejected by the Commissioner, stating, "careful consideration has been given the offer * * *." The rejection letter of October 7, 1954, related to and is to be considered in connection with, the offer containing the waiver. It was not contemplated that while Bosk negotiated to better his position the statute should continue to run, "so that even though the compromise offers were rejected collection of the tax would be barred by limitation." Shambaugh v. Scofield, supra. It follows that this action was timely in every respect.

■ Resisting the plaintiff's attempt to enforce its tax liens against the cash surrender value of insurance policies on the life of Bosk, in partial satisfaction of his outstanding tax liabilities, defendants Lincoln and Mutual urge that until Bosk elects to claim the cash surrender value, there is nothing upon which the Government can enforce its liens with regard to the policies. This contention, however, is patently without merit. It is well settled that where valid liens for taxes attach to the cash surrender value of life insurance policies before the death of the taxpayer, the Government is entitled to have its lien satisfied to the full extent of the cash surrender value. United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135; United States v. Behrens, 2 Cir., 230 F.2d 504; United States v. Metropolitan Life Insurance Co., 4 Cir., 256 F.2d 17; Smith v. Donnelly, D.C.E.D.La., 65 F.Supp. 415; United States v. Prudential Ins. Co., D. C.E.D.Pa., 54 F.Supp. 664; United States v. Trout, D.C.S.D.Cal., 46 F.Supp. 484. In a suit to foreclose a tax lien against a taxpayer, in which the insurance company and the beneficiaries have been joined, the court can order the taxpayer to produce the policies in court and cause distribution of the cash surrender value to be made in partial or full satisfaction of the lien, as the case may be. United States v. Metropolitan Life Ins. Co., supra; United States v. Trout, supra.

Although conceding that the plaintiff obtains a lien for the amount of its taxes up to the amount of the cash surrender value at the date the liens attach, Lincoln and Mutual contend that the Government cannot obtain the cash surrender values of the policies until the policies have matured as claims upon the death of Bosk. Reliance for this position is placed on United States v. Bess, supra. That decision makes it clear that such a contention is untenable. In that case the Supreme Court allowed recovery of the cash surrender value of the policies from the beneficiary after the death of the insured, but on which the liens had attached prior to his death. The Court was explicit, however, in stating that where the insured had "property" or "rights to property" within the meaning of Section 3670 of the Internal Revenue Code, 26 U.S.C.A. § 3670, liens thereon may be attached. And where a

lien comes into operation under Section 3670, it is my opinion that the Government, in a proper action joining the appropriate parties, can enforce the lien during the insured's lifetime thereby recovering the cash surrender value. That this is so was foreshadowed by dictum in United States v. Bess, 357 U.S. at page 57, footnote 2, 78 S.Ct. at page 1058, and squarely decided in United States v. Metropolitan Life Ins. Co., supra. In the latter case the District Court entered judgment enforcing liens against certain realty but dismissed the action insofar as it sought to enforce liens against the taxpayer's interest in the cash surrender values of insurance policies taken out on his life. The taxpayer, a futigive from justice, had absconded to Canada with his wife and daughter, the beneficiaries under the policies, and had the policies in his possession. On appeal, the late Chief Judge Parker of the Court of Appeals for the Fourth Circuit wrote a comprehensive and learned opinion on the very question at issue herein. Having disposed of the fact that the cash surrender value of life insurance policies constituted property and that the Government's liens thereon were perfected, matters not here disputed, the court turned its attention to the alleged necessity of the insured's exercising his option of claiming the cash surrender value of the policies before the Government could enforce its liens thereon. With regard to this question, Judge Parker held (256 F.2d at page 22–23):

"It is said, relying upon such cases as United States v. Metropolitan Life Ins. Co., 2 Cir., 130 F.2d 149, and United States v. Penn Mut. Life Ins. Co., 3 Cir., 130 F.2d 495, 142 A.L.R. 888, that unless the insured has exercised his option to take cash surrender value under the policy, there is nothing to which the lien provided for by statute can attach. *As pointed out above, however, insured unquestionably has a property right under the policies, the value of which is measured as a practical matter by the cash surrender value, and we do not think the right of the government to reach such property for taxes can be defeated by the fact that the insured has not made an election under the policies.* This is the effect of the decisions, heretofore cited of Rowen v. Com'r, supra, 2 Cir., 215 F.2d 641; United States v. Behrens, supra, 2 Cir., 230 F.2d 504; United States v. Hoper, supra, 7 Cir., 242 F.2d 468; and United States v. Bess, supra, 3 Cir., 243 F.2d 675.

"The promises of the companies with relation to the cash surrender values amount to promises to pay these to the insured on his demand; and where his rights under the policies are subjected to tax liens, the right to demand the cash surrender value is vested in the government to the extent necessary to satisfy the liens. * * *

* * * * * *

"When the insured's interest in the policies is subjected to the tax lien under this proceeding, this amounts to a seizure of such interest by the United States (Miller v. United States, 11 Wall. 268, 297, 20 L.Ed. 135); and the United States, by virtue of such seizure, may exercise any right which the insured might have exercised under the policies, including the election to take the cash surrender value." (Emphasis added.)

On the question of the sufficiency of the proceedings to foreclose the tax liens under Section 7403, Internal Revenue Code of 1954 (26 U.S.C. 1958 ed., § 7403), the section under which the present action was instituted, on the cash surrender values of the policies, it was further stated (256 F.2d at pages 23–25):

"We think it clear that the proceeding here, which was instituted under 26 U. S.C. § 7403, was sufficient to foreclose the tax lien asserted on the policies and to protect the interest of the insurance companies. Not only were the insured and the companies made parties to the proceeding, but the beneficiaries under the policies were also made parties. As the insured was not present within the state, it was proper that he be served by publication so that the court might

foreclose the tax lien upon his property. 28 U.S.C. § 1655. And as the insurance companies were present doing business within the state, it was clearly proper that the suit be brought there to reach insured's interest in the policies. Harris v. Balk, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023. *There is no reason why the court should not determine the value of the insured's interest under the policies and direct that this be paid upon the tax liens asserted by the government, nor why this will not fully protect the companies with respect to their obligations under the policies in the same way that a debtor garnishee is protected in any garnishment proceeding. \* \* \**

\* \* \* \* \* \*

"The court can unquestionably condemn the interest of the insured under the policies to the satisfaction of the lien and can direct that such interest be paid by the insurance companies to the United States, the holder of the lien. This interest is the cash surrender value of the policies. *It is argued, however, that the court may not do this, because the policies must be surrendered as a condition to obtaining the cash surrender value; but the surrender is for the protection of the companies and they will be as well protected by the judgment of the court as by the surrender of the policies, since the policies are not negotiable.* See Foley v. Equitable Life Assur. Society, 290 N.Y. 424, 49 N.E.2d 511, 514; Rubenstein v. Rubenstein, Sup., 105 N.Y.S.2d 24; United States v. Manufacturer's Trust Co., 2 Cir., 198 F.2d 366, 369; Harris v. Balk, supra. *Of course, surrender of the policies should be ordered if the policies are available for surrender.* When, however, they are unavailable for surrender, because the owner has absconded to a foreign country and is beyond the reach of personal process, and when the interest of the insurer will be protected by the judgment of the court, the insurer should be required to pay the cash surrender value in the proceeding under the statute." (Emphasis added.)

The above quoted matter most persuasively and soundly disposes of the questions involved in the Government's favor. It is clear that if the Government can foreclose on cash surrender values of insurance policies when neither the insured nor the policies are within the jurisdiction of the court, then *a fortiori*, the Government can certainly foreclose its liens when the insured, taxpayer, is within the jurisdiction of the court. As stated by Judge Parker, in United States v. Metropolitan Life Insurance Co., 256 F.2d at page 25, "the court is not so impotent that it cannot apply to the satisfaction of tax liens property interests of a taxpayer held by corporations [insurance companies] within its jurisdiction."

Accordingly, the Court holds that it has jurisdiction over this controversy and the parties thereto; that this action was timely instituted; that the defendant, Israel M. Bosk is indebted to the plaintiff in the amount of $8,690.05, plus interest thereon according to law; that Federal tax liens have attached to the present cash surrender value of the life insurance policies which are the subject matter of this action; that the defendants, Lincoln National Life Insurance Company and Mutual Life Insurance Company, are directed to pay over to plaintiff the present cash surrender values of the said life insurance policies, and other properties therein of defendant, Israel M. Bosk, in partial satisfaction of plaintiff's claim; that defendant, Israel M. Bosk, is hereby directed to surrender to defendants, Lincoln National Life Insurance Company and Mutual Life Insurance Company, the original of the aforesaid policies; and that upon application of the cash surrender values of said policies, the plaintiff is entitled to a deficiency judgment against defendant, Israel M. Bosk, for the remaining unsatisfied portion of said defendant's tax liability and interest thereon as provided by law, if any, in the amount remaining unsatisfied.

Ordered accordingly.