**UNITED STATES of America,
Plaintiff,**

v.

**Lawrence SUNBROCK, alias Lawrence Henry Sunbrock, Maryon Sunbrock, alias Marion Pope Sunbrock, Georgia Francis Truitt Hornsby, Julia Sunbrock, alias Julia Surnbrock, Racing, Inc., Florida Racing, Inc., Rodeo, Inc., Rocket Speedway, Inc., A. L. Lewis (whose Christian name is unknown), Jennie Lewis, W. W. Arnold, Trustee, G. I. Lantz (whose Christian name is unknown), Finfrock Industries, Inc., Virginia R. Benjamin, Charlton C. Morgan, J. L. Marks (whose Christian name is unknown), Defendants.**

**UNITED STATES of America,
Plaintiff,**

v.

**Lawrence H. SUNBROCK, Racing, Inc., Florida Racing, Inc., Defendants.**

Civ. A. Nos. 629 and 962.

United States District Court
S. D. Florida,
Orlando Division.

Feb. 21, 1961.

Abbott M. Sellers, Acting Asst. Atty. Gen., Richard M. Roberts, Chief, Claims Section, Tax Division, Washington, D. C., for plaintiff.

Harry H. Martin, Jacksonville, Fla., for defendants.

DE VANE, District Judge.

Case No. 629 is an action under Section 3678, Internal Revenue Code of 1939, 26 U.S.C.A. § 3678, against Lawrence H. Sunbrock and others to foreclose liens for income taxes for 1940 to 1943, inclusive, 1946, 1950, 1951, 1954, and 1958; admission taxes for 1938 to 1941, inclusive, 1945, 1947, 1948, and 1950. Case No. 962 is also an action under Section 3678, Internal Revenue Code of 1939,

against Lawrence H. Sunbrock, Racing, Inc., and Florida Racing, Inc., to recover income and withholding taxes for 1950 to 1953, inclusive. All tax liabilities are asserted against Lawrence H. Sunbrock and the complainants pray that liens be foreclosed against all properties and rights of properties of the taxpayer.

Case No. 629 was filed on December 3, 1953. On March 4, 1954, this Court appointed a Receiver for certain property of Lawrence H. Sunbrock. This property consists principally of real estate located near Orlando, Florida, and is described in Paragraph XXXVI of the complaint. In Case No. 629 Georgia Truitt Hornsby, a divorced wife of Sunbrock, was joined as a defendant for the reason she held legal title to the real estate described in Paragraph XXXVI of the complaint in Case No. 629 alleged to belong to taxpayer. There is no real dispute as to taxpayer being the real owner of the real estate which is described in Paragraph XXXVI of the complaint and this Court entered an order pursuant to stipulation directing Mrs. Hornsby to transfer this property to Sunbrock and deliver the deed to the Receiver. Mrs. Hornsby's counsel agreed in open court to prepare and deliver a deed to be signed by Mr. and Mrs. Hornsby, with taxpayer as grantee, the deed to be delivered to the Receiver.

Fifteen other defendants are named in the first of the two complaints. They were joined because of liens or claims which they asserted against the property. Most of these defendants have filed disclaimers and have been dropped as defendants. The taxpayer has filed an answer denying liability and alleging that some of the claims of the United States are barred as to assessment and collection by the statute of limitations.

The case was tried upon the merits. At its conclusion the Court requested counsel for plaintiff to prepare and submit to the Court a comprehensive schedule of all tax liabilities claimed by the plaintiff against the defendant Sunbrock under both complaints, based upon the oral and documentary evidence intro-

duced in the case, giving effect to the elimination of duplications and giving proper credits for all payments made by the taxpayer. Such a schedule was promptly prepared and submitted to the Court. Whereupon, the Court called a post-trial conference of counsel and after some discussion of the schedule by counsel with the Court, the Court advised counsel that it particularly desired counsel to give special consideration to the following questions: (1) Whether the income tax assessments for 1941 and 1943 were timely as being made within three years of the due dates of the return for those years under Section 275 (a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 275(a); (2) Whether the evidence fairly established that taxpayer failed to file income tax returns for the years 1940, 1941 and 1943, thereby tolling the statute of limitations on assessments under Section 276(a) of the Internal Revenue Code, 26 U.S.C.A. § 276(a); (3) Whether the time for filing suit to collect the income taxes for 1940, 1941 and 1943 was extended beyond the six year period provided in Section 276(c) of the Internal Revenue Code by reason of provisions set forth in offers of compromise submitted by Sunbrock and filed with the Commissioner whereby the statute of limitations was extended beyond the date on which suit was instituted; (4) Because of the nature of this suit, being a suit to enforce tax liens against property, was plaintiff entitled to have the judgment enforcing such liens include delinquent and fraud penalties.

The Court at the conclusion of this conference suggested to counsel for the respective parties that they confer and determine if they could agree upon a consent decree in the case along lines suggested by the Court at the time, but counsel for plaintiff informed the Court that he did not have the authority to make such an agreement. For this reason the Court finds it necessary to consider both cases in their entirety on the record made before it at the hearing.

Before entering upon a consideration of these cases on the record, the Court is of the opinion that it would clarify this opinion if the Court gave a brief outline of the history of defendant's activities ever since he sought and obtained employment.

Defendant is at heart a showman and his early employment was with a company that operated a vaudeville theater in Cincinnati, Ohio. While he was with this company, he brought to the theater a troupe called "Georgia Wildcats". Defendant became fascinated with this performance and worked out an arrangement with its manager to secure billings at other theaters and to assist in the publicity for these shows. Defendant was quite successful in this venture and as the result of that, he went out on his own and began to put on shows of his own. He operated under different names at different times, such as Racing, Inc., Rodeo, Inc., Wild West Rodeo, Inc., and others, but the record in these cases makes it clear that the defendant was the real owner and operator of these several shows and that the names were fictitious, although he did go to the extent of incorporating a company with one of the names.

Another matter that is of importance at this state of this Decision is the difference in practice adopted by the owners of the properties where these shows were staged. Certain of the companies that leased property for use by the defendant took command of the gate receipts, collected, withheld and paid to the Internal Revenue admission taxes and to itself its own share of the receipts and paid the rest over to the defendant, while other companies merely leased the property for a specified amount and defendant collected the admission taxes plus the admission receipts which he retained. It is only in those cases where the defendant was permitted by the owner of the leased property to run the show, collect the admission taxes and the admission receipts that are involved in the admission tax cases set out in the complaints in these two cases.

For some time prior to and during the Second World War when military camps

were scattered all over the United States, these shows promoted by defendant did a large business on many occasions. The shows were, of course, to some extent affected by the weather and shows were sometimes rained out, which resulted in losses to the defendant. These matters are well covered by the testimony in the case and are in no way an issue in the specific tax claims asserted by the Government against the defendant.

After trouble arose between the Internal Revenue Office and the defendant with reference to proper accounting by the defendant for admission taxes collected on the shows where defendant had control of the income, the Internal Revenue Office frequently sent an agent to the place where the show was to be staged and when the show opened, the agent went into the ticket office and checked the admission taxes collected, took the money from the cash receipts and allowed the defendant credit therefor. None of those particular cases are involved here.

Plaintiff was faced with a serious responsibility in determining the amount of income defendant realized but failed to report in income tax returns filed with the Internal Revenue Bureau and the amount of admission taxes collected but not accounted for by the defendant. However, the evidence of the agents of the plaintiff as to the amount of taxes due in each of the cases was not controverted by any evidence offered by the defendant. The main issue made by the defendant is a question as to whether plaintiff's claims, as to the taxes due, are correct and whether they are barred by the statute of limitations.

During the trial of the cases and at the conclusion thereof, the controversy as to the statute of limitations centered primarily around the income tax assessments for the years 1940, 1941 and 1943. A careful analysis of the testimony with reference to these years discloses that the income tax assessments for 1941 and 1943 were timely as being made within three years of the due dates of the returns for these years under Section 275

(a) of the Internal Revenue Code of 1939.

Considerable evidence was offered in the case as to whether the taxpayer failed to file income tax returns for these years, thereby tolling the statute of limitations on assessments under Section 276(a) of the Internal Revenue Code. Plaintiff contends and sought to establish that no valid income tax returns were filed for these years and, therefore, no statute of limitations ran against the assessments later made for these years. Defendant testified that income tax returns were filed by him for these years and every other year where income tax returns were due. Defendant also relies heavily on two depositions offered in evidence by plaintiff, one by Fidelis Riley, who was in charge of all file records of the Internal Revenue Office at Cincinnati, Ohio, during this period, and another by Ruth E. Crawford, senior clerk of the District Director, Internal Revenue Service, at Los Angeles, California. In these depositions each of these witnesses testified that income tax returns for defendant were filed in their offices for those years. The Government contends that these were "pick-up" returns. Defendant contends that they were returns prepared and filed by him. The difficulty of this matter lies in the fact that not one of these returns is in existence today and the matter in dispute has to be determined from the evidence as a whole bearing upon these issues.

Plaintiff was able to show that for the year 1942 defendant filed a purported income tax return which was on its face invalid and was able to establish that no income taxes were paid by the defendant for either of the years in question, although substantial income taxes were due, based upon the income of the defendant during these years. The income taxes assessed for these years were based upon reports prepared by Internal Revenue Officer G. Russell McHale. His deposition with reference to this report was taken by the plaintiff, in which he described in detail the methods followed by him in arriving at the amount of tax-

es due for the years involved. When his deposition was offered in evidence, defendant objected strenuously to its receipt in evidence, on grounds that it had not been properly signed. At the time the Court heard and carefully considered the objections to the proffered deposition of McHale, overruled them stating his reasons therefor and received the same in evidence. Defendant in his brief filed in these cases again attacks the ruling of the Court and insists this deposition was improperly signed and should be now stricken by the Court. The Court adheres to the ruling made at the time the deposition was offered in evidence and overrules the objection of the defendant thereto and refuses to strike the same.

Taking the record as a whole, the Court is of the opinion that no valid income tax return was filed by defendant for either of the three years in question and the assessments made by the Government for these years were properly and accurately determined and are not barred by the statute of limitations.

■ The assessments for 1940, 1941 and 1943 were made on March 30, 1945. Suits for the recovery of the income taxes for these years were not filed until December 3, 1953, which is more than six years after the assessments were made. Section 276(c) of the Internal Revenue Code of 1939 requires that suits be instituted within six years after the assessment of tax, but provides further that it may be begun prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer before the expiration of such six year period. Offers in compromise were submitted by the taxpayer, which were pending before the Commissioner or the Department of Justice, and if validly made and accepted would further toll the statute beyond the six year period within which suit could be brought for the recovery of the taxes. Defendant challenges the validity of the offers in compromise, since they were not, except the last one, signed by the Commissioner and it was signed after the six year period had run.

The overwhelming weight of authority including cases decided by the Fifth Circuit is to the contrary. The failure of the Commissioner to sign the offer does not affect its validity. Only Fifth Circuit cases will be cited. Parker Co. v. Commissioner, 49 F.2d 254; Shambaugh v. Scofield, 132 F.2d 345; United States v. Bosk, D.C.S.D.Fla., 180 F.Supp. 869.

Defendant claims that all admission taxes assessed for the years 1938 to 1947 inclusive are likewise barred by the statute of limitations. Item XA was assessed on December 12, 1944. Items XB, XC and XD were assessed on December 14, 1944; Item XIV on December 9, 1945, and Item XIVA on June 12, 1947. This suit was filed more than six years after these assessments.

Section 276(c) of the Internal Revenue Code of 1939 requires that suits of this nature be instituted within six years after the assessment of the tax, but provides further that the period may be extended by the taxpayer as outlined previously herein. Offers of compromise were submitted by the taxpayer, which were pending before the Commissioner or Department of Justice for certain periods and which were either rejected by the Commissioner or Department of Justice or withdrawn by the taxpayer. Two of the offers of compromise appear as Exhibits 8 and 9 in the record. These offers of compromise are criticized upon the same ground as were the offers of compromise submitted in connection with income tax liabilities and it is unnecessary for the Court to do more than to say that it adheres to the ruling it made in connection with the validity of these offers of compromise as they relate to the income tax liabilities, and the Court finds and holds that these admission taxes were not barred by the statute of limitations when the suits were filed.

Defendant makes a broad-sided attack on the entire record in these cases, claiming plaintiff's proof is based on speculation and guess work without adequate records or supporting data. Plaintiff's evidence on the contrary shows plaintiff's witnesses were extremely careful and ex-

cluded every doubtful item where the evidence was insufficient to establish same to a certainty. Defendant submitted no evidence tending to show errors in plaintiff's determination of defendant's tax liability. All of the defendant's books and records were subpoenaed and brought into court. They contributed nothing of value in the case. Defendant, in fact, kept no worthwhile records of his operations and has nothing to complain about as to the methods employed by plaintiff in determining defendant's tax liability. Compare Birmingham Business College, Inc. et al. v. Commissioner of Internal Revenue, 5 Cir., 276 F.2d 476.

■ The question of what to do with the delinquent and fraud penalties imposed against defendant in these cases is a difficult one to answer, and counsel for the respective parties have not materially contributed anything to help the Court in the solution of this problem. The Court is of the opinion that interest on these assessments up to the date the Receiver was appointed should be included as a part of the judgment of the Court enforceable against the property in receivership. As to delinquent and fraud penalties, the Court, based upon the cases cited below, is of the opinion that the amount of these penalties should be ascertained and states in its final decree, but that they do not occupy the status of preferred claims over other preferred claims that may be asserted against the property. Should the property sell for more than enough to pay the taxes and interest thereon, any balance will be retained by the Receiver to be disposed of on further order of this Court. McCormick v. Puritan Coal Min. Co., 3 Cir., 41 F.2d 213; United States v. Phillips, 5 Cir., 267 F.2d 374; United States v. Harrington, 4 Cir., 269 F.2d 719; United States v. Bass, 9 Cir., 271 F.2d 129; City of New York v. Saper, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710.

The holdings of the Court upon the several issues require that plaintiff make a recalculation of all the claims the Court has held plaintiff entitled to recover in these cases. The Court therefore directs plaintiff to file in the record in these cases a statement showing:

1. The income taxes and admission taxes assessed by plaintiff against defendant and approved herein.

2. A column showing the accrued interest thereon to March 4, 1954.

3. A column showing the assessment made, including both tax and interest.

4. A column showing delinquent and fraud penalties assessed.

A copy of such statement shall be promptly served upon counsel for the defendant, and should counsel for defendant desire a hearing thereon, the Court will grant such hearing.

Counsel for plaintiff is also directed to prepare a draft of a final decree in these cases that will carry into effect the holdings of the Court with reference to defendant's overall liability to plaintiff and the specific amount of such liability that constitutes a first lien upon the property of defendant seized by plaintiff. In the preparation of such final decree counsel for plaintiff is directed to include therein an appropriate provision making the lien of the Government a lien prior to all others, except such valid prior liens as may have been created prior to the date of the appointment of the Receiver in these cases. A copy of such proposed draft shall be promptly served upon counsel for defendant and a copy sent to the Court.