**H. W. MYRICK, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 18831.**

United States Court of Appeals
Fifth Circuit.

Dec. 8, 1961.

R. Lamar Moore, Moultrie, Ga., Moore & Moore, J. O. Gibson, Moultrie, Ga., of counsel, for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Charles B. Freeman, Meyer Rothwacks, Attys., Dept. of Justice, Washington, D. C., Frank O. Evans, U. S. Atty., Macon, Ga., Harry Baum, Atty., Dept. of Justice, Washington, D. C., Floyd M. Buford, U. S. Atty., William A. Davis, Jr., Asst. U. S. Atty., Macon, Ga., for appellee.

Before TUTTLE, Chief Judge, and CAMERON and BROWN, Circuit Judges.

TUTTLE, Chief Judge.

This appeal presents the question whether the assessment and demand for payment of additional taxes for years as to which the taxpayer had an outstanding offer in compromise amounted to a "rejection" of the offer so as to start the running of the statute of limitations when in fact the offer was not formally rejected for some two years later. The trial court held that such assessment and demand for payment did not terminate the "pendency" of an offer in compromise and the statute remained suspended under the terms of the waiver contained in the offer until the date of formal rejection by the Commissioner. We affirm.

This taxpayer received a ninety-day letter proposing additional assessments and fraud penalties for the years 1943, 1944 and 1945. Thereafter, on October 28, 1948, and before the deficiencies were assessed, he made an offer in compromise on the form provided for that purpose by the Internal Revenue Service (Form 656–C). One of the terms of that form is as follows:

"* * * the proponent hereby expressly waives:

"2. The benefit of any statute of limitations applicable to the assessment and/or collection of the liability sought to be compromised, and agrees to the suspension of the running of the statutory period of limitations on assessment and/or collection for the period during which this offer is pending, or the period during which any installment remains unpaid, and for 1 year thereafter."

On December 23, 1949, deficiency assessments were made by the Commissioner in the sum of $106,535.16 as to these three years. On December 27, 1949, demand was made on the taxpayer for payment of the asserted deficiencies.

On September 5, 1951, the Commissioner rejected the offer in compromise.

Subsequently, on July 23, 1958, the taxpayer made a second offer in compromise. It was rejected five days later and this suit was filed on September 11, 1958. It is not disputed that if the first offer in compromise was "pending" until the rejection of September 5, 1951, the suit was timely brought. This would follow because to the normal statutory period of six years would be added the one year period provided for in the waiver contained in the offer in compromise. Nor is there any longer any dispute as to the amount of the tax and penalties due.

The taxpayer's principal contention is that the first offer in compromise was no longer "pending" for the purpose of suspending the running of the statute after the Commissioner made an assessment of $106,353.16 and demanded payment therefor. Such action, taxpayer says, is legally inconsistent with the view that the Commissioner was still giving consideration to the offer of $20,000 in installments in compromise. While there might be some surface plausibility to this agreement if we disregarded other pertinent provisions of the taxing statutes, there is none whatever when it is realized that the acts of making an assessment and demand for payment are an essential to the Government's being entitled to have its lien for the claimed taxes recorded and providing notice to third parties. Section 3670 of the Internal Revenue Code of 1939, as amended, 26 U.S.C.A. § 3670, provides:

"§ 3670. Property subject to lien

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

■ Thus it will be seen that not only was the assessment necessary but also that no lien would arise until there was a demand for payment. Cf. United States v. Ettleson, 7 Cir., 159 F.2d 193; In re Baltimore Pearl Hominy Co., 4 Cir., 5 F.2d 553. No conclusion can be reached, therefore, that the making of the assessment and sending the formal demand for payment constituted a rejection of the offer in compromise, as is so strenuously contended by the appellant. It can not be presumed that the Government intended to have its hands tied so far as related to the establishment of the priority of its claim during the pendency of the offer. As was stated by this Court in Shambaugh v. Scofield, 5 Cir., 132 F.2d 345, 347:

"The taxpayers intended, and all parties understood, that the waivers were submitted in aid, and as a part of, the taxpayers' efforts to effect a compromise adjustment of the tax, and that the purpose of the waivers was to suspend the running of the statute while the offers were under consideration. It was certainly not contemplated that while the taxpayers negotiated to better their position the statute should continue to run, so that even though the compromise offers were rejected collection of the tax would be barred by limitation."

■ We think it equally true that the parties here did not contemplate that while the proposed compromise was being negotiated the Government must permit the assets of the taxpayer to be sold or transferred free and clear of the Government's lien. The Commissioner's action in making the assessment and demand for payment had no effect on the acceptance or rejection of the offer in compromise, which remained pending, as the trial court found, until rejected by the Commissioner on September 5, 1951.

■ We find no merit in the further contention that the waiver applied only to the time of assessing and not to the time of collecting the taxes. We think the language is too clear for interpretation. It waives "the benefit of any statute of limitations applicable to the assessment and/or collection of the liability sought to be compromised." This language necessarily comprehends limitations statutes fixing the time for commencing action following both assessment and collection

■ Finally, we think that the Shambaugh case, supra, fully answers the appellant's last contention—that it is not shown when the Commissioner accepted the waiver. There this Court said:

"The compromise offers were considered on the merits and were rejected by letters signed by the Commissioner, stating in effect that 'careful consideration has been given the offer and supporting data.' These rejection letters relate to, and are to be considered in connection with, the offers which contained the waivers. They constitute presumptive proof of the Commissioner's agreement to the waivers, unless overcome by countervailing evidence, which is here lacking. Had the Commissioner formally signed the waivers themselves, the taxpayers could have gained nothing more. Having had full advantage of the waivers, the taxpayers should not now be heard to repudiate them unless they were clearly inoperative. In the circumstances here presented, we hold the waivers sufficient to satisfy the requirements of the statute and effective to toll the statute of limitation beyond the date of distraint."

It thus becomes clear that there need be no showing when, or even whether, the Commissioner actually accepted the waiver by a formal writing, although in fact the form of acceptance is here completed by the name of an Internal Revenue Agent.

The judgment is

Affirmed.