**Harold H. SENGER, Plaintiff,**
v.
**UNITED STATES of America, Defendant.**
**Civ. A. No. 2838.**

United States District Court
D. Delaware.
Aug. 11, 1965.

Daniel O. Hastings, of Hastings, Taylor & Willard, Wilmington, Del., and Robert M. Taylor, Philadelphia, Pa., for plaintiff.

Louis F. Oberdorfer, Asst. Atty. Gen., C. Moxley Featherston, David A. Wilson, Jr., Burton G. Lipsky, Dept. of Justice, Washington, D. C., Alexander Greenfield, U. S. Atty., Wilmington, Del., for defendant.

LAYTON, District Judge.

This is a suit against the United States (hereafter defendant) on a claim for a tax refund.

From 1946–1953 the taxpayer, Harold H. Senger, was engaged in the business of transporting milk by tank trucks and trailers. As such transporter he was required, by 1939 IRC § 3475, to collect an excise tax from his customers, make returns, and pay the taxes to the United States. Senger collected the tax and accurately kept records of his collections, but failed to file returns and make payments to the United States. During these years, Senger should have paid $66,039.84 in satisfaction of the tax. On May 25, 1954, the United States made an assessment against Senger for taxes under 1939 IRC § 3475, a 25% penalty under 1939 IRC § 3612,[1] a 100% penalty

---

1. (d) *Additions to Tax.*—

(1) *Failure to file return.*—In case of any failure to make and file a return or list within the time prescribed by law, or prescribed by the Commissioner or the collector in pursuance of law, the Commissioner shall add to the tax 25 per centum of its amount, except that when a return is filed after such time and it is shown that the failure to file it was due to a reasonable cause and not to willful neglect, no such addition shall be made to the tax: *Provided,* That in the case of a failure to make and file a return required by law, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, if the last date so prescribed for filing the return is after August 30, 1935, then there shall be added to the tax, in lieu of such 25 per centum: 5 per centum if the failure is for not more than 30 days, with an additional 5

under 1939 IRC § 1718,[2] and interest under 1939 IRC § 3310, in the total amount of $163,750.49. Pursuant thereto, a lien on Senger's property was filed with the Office of the Recorder of Deeds of Kent County.

Since July 15, 1955, Senger has been making regular payments on his liability. In order to prevent seizure and sale of his business assets, Senger agreed, on August 11, 1955, that his business would be operated by John S. Hanlon as escrow agent, that Mr. Hanlon would make regular monthly payments of at least $2,500.00, and that Senger would manage the business as a $50 per week employee. From July, 1955, until September 10, 1963, Senger paid to the United States over $125,000.00. Finally, on August 31, 1963, Senger, with the approval of the United States, sold his trucking business. On September 23, 1963, Senger assigned to the United States all his rights in the sale contract of August 31, 1963. Since September 1963, Senger has paid in excess of $30,000.00.

At the same time that Senger has attempted to satisfy his liabilities, he has been seeking relief from the United States. He filed a claim for abatement of the 100% penalty in 1954. The United States rejected the claim asserting that the assessment of the 100% penalty was proper and lawful. Senger has persistently contended that the 100% penalty was erroneously assessed. He filed offers in compromise with the United States on March 25, 1955, July 8, 1955, December 23, 1957, January 10, 1961, and July 10, 1961. None of these offers was accepted by the defendant. On July 3, 1963, Senger filed a claim for refund and abatement. On July 25, 1963, defendant notified Senger that his claim would be rejected, but there has been no formal rejection. On August 14, 1963, Senger filed a petition for preliminary restraining order in this court to prevent the United States from selling his property until the rights on the claim for refund were full yand finally adjudicated. On April 28, 1964, the defendant agreed not to levy on the property of Senger until the suit for refund had been fully adjudicated. Senger filed the instant action on April 28, 1964.

In this suit, Senger contends that he is entitled to a refund of $66,039.84 plus interest at 6% because he is not liable for the 100% penalty under 1939 IRC § 1718. The defendant does not contest Senger's claim on the merits [3] but contends that under 1939 IRC § 3313 [4] this

per centum for each additional 30 days or fraction thereof during which failure continues, not to exceed 25 per centum in the aggregate.

2. (c) Any person who willfully fails to pay. collect, or truthfully account for and pay over, any tax imposed by this chapter, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty of the amount of the tax evaded, or not paid, collected, or accounted for and paid over, to be assessed and collected in the same manner as taxes are assessed and collected. No penalty shall be assessed under this subsection for any offense for which a penalty may be assessed under authority of section 3612.

3. The government does not concede its rights on the merits but rather does not seek to have such rights enforced in the case at bar.

4. All claims for the refunding or crediting of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty alleged to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected must, except as otherwise provided by law in the case of income, war-profits, excess-profits, estate, and gift taxes, and except as otherwise provided by law in the case of employment taxes under subchapters A and D of chapter 9, be presented to the Commissioner within four years next after the payment of such tax, penalty, or sum. The amount of the refund (in the case of taxes other than income, war-profits, excess-profits, estate, and gift taxes, and other than such employment taxes) shall not exceed the portion of the tax, penalty, or sum paid during the four years immediately preceding the filing of the claim, or if no claim was filed, then during the four years immediately preceding the allowance of the refund.

court is without jurisdiction to grant a refund on payments made before July 3, 1959. Accordingly, defendant concedes Senger's claim for a refund in the amount of $22,386.02. By way of counterclaim, the defendant seeks a judgment for $30,290.29, the amount unpaid on the total liability. Both parties have filed motions for summary judgment.

Senger contends that the statute of limitations does not effectively bar his claim for four reasons: (1) The United States is estopped from asserting the statute of limitations. (2) The statute of limitations, 1939 IRC § 3313, was suspended by waiver of the statute of limitations on assessments in the offer in compromise. (3) The statute of limitations is not a bar because Senger filed an informal claim within the statutory period. (4) Taxpayer's liability should be abated under the doctrine of equitable recoupment.

First, it is contended that the United States is estopped from interposing the statute of limitations for the filing of claims for refund because of unconscionable conduct on the part of the Internal Revenue Service. Certainly, the history of its relations with the taxpayer over the past ten years does not present an altogether happy picture. Conceding Senger's original improper conduct in failing to pay over the tax as required by the law, the fact remains that as a consequence, the defendant (1) in addition to the original amount of taxes owed, imposed a 100% penalty which, nine years later as the result of Rosenberg v. United States, 327 F.2d 362 (2 Cir. 1964), appears to have been of the most doubtful validity, (2) a 25% penalty on top of the 100% penalty, (3) substantial interest charges, (4) has received altogether from the taxpayer about $158,-942.00, some $92,942.00 more than the

amount of the taxes originally due and (5) while for the purposes of this proceeding conceding the impropriety of the 100% penalty in 1955 [5] and thus the validity of the claim for refund, nevertheless, interposes taxpayer's failure to file his claim for refund within the period prescribed by 1939 IRC § 3313 as a defense.

During a substantial portion of this period, Senger by arrangement with defendant installed a nominee in charge of his business who operated it under an agreement with the United States to pay to it some $2500 monthly in reduction of its claim. Moreover, the business has now been sold and the proceeds paid over to the defendant in reduction of the claim, and, finally a lien in favor of the United States against his home threatens its sale if this litigation is unsuccessful.

In reply the defendant points out quite correctly (1) that courts only on the most rare occasions have applied the principle of equitable estoppel against the United States, (2) that at the time of the imposition of the 100% penalty, Section 1718 (c) had not been challenged in the courts and Rosenberg [6] was not even decided until 1964 [7] (3) that it was not guilty of any affirmative misrepresentation which resulted in Senger's failing to make a timely filing of his suit for refund and (4) Senger during all this period was free to file his claim for refund but did not do so until too late.

Some would view the conduct of defendant in this long transaction as amounting to no more than arm's length dealing between business men; others would label it sharp practice. I do not decide the point because in my view, the running of the statute on the filing of the claims for refund was suspended for reasons now to be discussed.

---

5. The United States concedes the invalidity of the 100% assessment for the purposes of this case only.

6. The decision in Rosenberg was not squarely on Sec. 1718(c) but rather Sec. 2707(a) having identical language.

7. However, despite this, it appears that Senger, although guilty of not paying his 1954 tax, nevertheless, kept a complete set of books showing exactly what was due and, consequently, the United States would have been hard put to convict Senger of wilful failure to pay the tax.

Senger's second argument is that the statutory period for filing claims for refunds was suspended, with the result that 1939 IRC § 3313 is not a bar to his claim. He contends that suspension of the statutory period for filing claims for refunds is a concomitant result of the waiver which appeared in the offers in compromise he filed. Each offer in compromise contained the following language:

"[T]he proponent expressly waives * * * the benefit of any statute of limitations applicable to the assessment and/or collection of the liability sought to be compromised, and agrees to the suspension of the running of the statutory period of limitations on assessment and/or collection for the period during which this offer is pending, or the period during which any installment remains unpaid, and for 1 year thereafter."

Senger relies on Walsonavich v. United States, 335 F.2d 96 (3 Cir. 1964), to support his rights on this theory.

In Walsonavich the taxpayer made excise tax payments from 1951 to sometime in 1957. In 1954 and 1956 the taxpayer and the Commissioner of Internal Revenue signed Form 872–B agreeing that the government could make assessments until a specified time irrespective of the statute of limitations. Subsequently, the excise taxes involved were determined to be void. The taxpayer filed a claim for refund. The claims for 1951 and 1952 were rejected on the ground that refund

for those years was barred by the statute of limitations.

The Third Circuit Court of Appeals held that the statute of limitations was not a bar to recovery. The court observed that Congressional policy favored mutuality for extension agreements,[8] and concluded that the extension agreements would lack mutuality unless the court held that the time for filing refund claims was also extended. The conclusion that there would otherwise be no mutuality was based on the rationale that "[l]ittle, if any benefit to taxpayer [from the waiver agreement] can be said to accrue as to * * * [the period from 1951 to 1952]" because at the time of the waiver agreement the taxpayer had paid the amount assessed for 1951 and 1952. Id. at 100.

In the early phases of this case defendant contended that Senger had waived only the statute of limitations on collections, not the statute of limitations on assessments. However, at this stage of the proceedings the defendant seems to have abandoned this line of argument. Consideration of the circumstances[9] leads to the conclusion that Senger did waive the statute of limitations on assessments. Myrick v. United States, 296 F.2d 312 (5 Cir. 1961).

Nonetheless, the defendant contends that the statute of limitations on filing claims for refunds was not suspended because, in the case at bar (1) there is

---

8. Section 322(b) of 1939 IRC provided mutuality for extension of the statutory period for assessment of income taxes. Mutuality was extended to extension of the statutory period for assessment of excise taxes by 1954 IRC § 6511(c) (1).

9. The language of the waiver provision is not dispositve of the question of whether the taxpayer waived the statute of limitations on assessments, 1939 IRC § 3312 (a) or the statute of limitations or collections, 1939 IRC § 3312(d) or both. The language is intentionally ambiguous. The ambiguity resulted from language used in a government form. There would be no difficulty in the matter of interpre-

tation if there had been a separate form used when only the statute of limitations on collections was to be waived. Ambiguities in documents are to be strictly construed against the drawer, even if the drawer is the United States government. Ventura Consolidated Oil Fields v. Rogan, 86 F.2d 149, 153, 154 (9 Cir. 1936) (dicta); 10 Mertens, Law of Federal Income Taxation § 57.56; see Commissioner of Internal Revenue v. Leasing & Building Co., 46 F.2d 2, 4 (6 Cir. 1931). Furthermore, if Senger had not intended to waive the statute of limitations on assessments, he could have stricken that portion of the waiver.

no need for mutuality, and (2) even applying Walsonavich the statutes do not provide mutuality.[10] The primary purpose of the defendant's contention is to distinguish the case at bar from Walsonavich, where the court applied mutuality, despite the fact that the statutes did not directly provide it, reasoning that (1) there was a need for it, and (2) statutes evinced a Congressional policy favoring mutuality for extension agreements.

As to the first point the defendant argues that mutuality is already present in the case at bar because the Commissioner considered the offer in compromise and would not have done so if the taxpayer had not agreed to the waiver. In support of this argument the defendant cites United States v. Havner, 101 F.2d 161 (8 Cir. 1939). The Havner case is inapposite because it discusses only the effect of the waiver of the statute of limitations on collections,[11] and the case at bar involves the effect of the waiver of the statute of limitations on assessments. The defendant has also attempted to support this argument with the contention that the offer in compromise is only for the benefit of the taxpayer. However, the United States is as likely to benefit from the offer in compromise as the taxpayer:

> "[T]he Commissioner may compromise any civil or criminal liability arising under the internal revenue laws * * *. Any such liability may be compromised only upon

one or both of the following two grounds:

> (1) Doubt as to liability; or
> (2) Doubt as to collectibility."

2 Federal Tax Regulations § 301.-7122–1(a) (1964).

■ In Walsonavich the result was not reached by determining whether there was some possible benefit to both sides. Rather the court carefully analyzed the benefit derived by each side and was governed by what it considered to be an imbalance of benefit. A similar analysis in the case at bar discloses that the mere waiver of the statute of limitations on assessments by the taxpayer is decidedly more beneficial to the United States than to the taxpayer. Both the taxpayer and the United States will benefit if the offer in compromise is accepted. But if the offer in compromise is rejected, the United States will benefit because the period in which additional assessments can be made will be extended, and the taxpayer will have no benefit—unless the period for filing claims for refunds is also extended. There is a need for mutuality in the instant case.

Nor is the defendant's second argument, that the statutes do not provide mutuality on the facts of the instant case, meritorious.

It is arguable that under Walsonavich the statutes do not govern the doctrine of mutuality. In Walsonavich none of the statutes provided for an extension of the statutory period for filing claims for refunds. See discussion supra. Nonetheless, the court held that an agreement

10. The force of the defendant's second argument, that the statutes do not provide mutuality in the case at bar, is not evident unless the peculiarity of Walsonavich vis-a-vis the statutes is clearly understood. Walsonavich, although decided in 1964, was governed by the 1939 Code. The 1939 Code made no provision for the waiver of the statute of limitations on assessment of excise taxes. Consequently, there was no statutory mutuality for such waivers. However, the 1939 Code did provide for extension of the statutory period for assessment of income taxes and that such an extension would similarly extend

the statutory period for filing claims for refunds. 1939 IRC § 322(b). The 1954 IRC §§ 6501(c) (4), 6511(c) contained a similar rule for excise taxes. So the situation in Walsonavich was that the period of limitations on refunds would have been extended by the statutes if the case had involved an income tax or if the 1954 Code had been controlling.

11. The benefit to the taxpayer, described in Havner, was delay in making payments. In the case at bar, Senger has continuously made payments.

extending the statutory period for assessments should be given mutuality. However, in Walsonavich it seems that the court was moved by the fact that the refund would have been allowable if the case involved income tax rather than excise tax, or if the 1954 Code had been applicable. The better construction of Walsonavich seems to be to construe it narrowly, to apply only where the statutory period for refunds would be extended (1) under 1939 IRC § 322(b) if the tax involved was an income tax, or (2) if the case was governed by the 1954 Code.

The defendant's contention is that the facts of this case do not fall within 1939 IRC § 322(b) and 1954 IRC § 6511(c) (1) because there was no extension agreement pursuant to 1939 IRC § 276 (b) and 1954 IRC § 6501(c) (4). The defendant wrongfully assumes that a suspension of the statute of limitations in an offer in compromise cannot also be an agreement under 1939 IRC § 276(b) or 1954 IRC § 6501(c) (4). Cf. Holbrook v. United States, 284 F.2d 747, 753 (9 Cir. 1960); United States v. Sunbrock, 192 F.Supp. 455, 459 (S.D.Fla. 1961); United States v. Brown, 225 F. Supp. 414 (E.D.Pa.1964). The only requirement for an extension agreement under either section is that the agreement be in writing. In the case at bar only Senger's signature appears on the offer in compromise. However, a signed rejection of the offer in compromise, after it has been considered, satisfies the requirement of written assent from the United States. Cf. Shambaugh v. Scofield, 132 F.2d 345 (5 Cir. 1943); Holbrook v. United States, supra, 284 F.2d at 753; Myrick v. United States, supra,

296 F.2d at 314; United States v. Sunbrock, supra, 192 F.Supp. at 459; United States v. Bosk, 180 F.Supp. 869, 873–874 (S.D.Fla.1960). Therefore, contrary to the defendant's contention, there is an agreement under 1939 IRC § 276(b) and 1954 IRC § 6501(c) (4).[12]

The defendant points out that 1939 IRC § 322(b) and 1954 IRC § 6511(c) speak of an extension of the period for assessment, and the offers in compromise contained a waiver of the statute of limitations. This is not even a difference since the effect of the waivers was an extension of the statutory period for assessment.

The statutory period for filing claims for refunds should be extended back the same amount of time that the statute of limitations on assessments was suspended by the offers in compromise agreed to in writing by the United States. There are three such offers. (1) An offer made on July 7, 1954, was rejected on February 15, 1955. (2) An offer made on March 25, 1955, was rejected on April 29, 1955. (3) An offer made on July 10, 1961, was rejected on January 4, 1963.

The taxpayer's third point asserting a right to recover on the theory of informal claim is without merit. The taxpayer argues that the claim for abatement filed on May 5, 1955, was an informal claim. Even if this claim for abatement could be treated as an informal claim, the taxpayer cannot recover on this ground because an informal claim cannot be amended subsequent to rejection and expiration of the statutory period. See United States v. Kales, 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132 (1941); United States v. Memphis Cot-

---

12. Satisfaction in this manner of the requirement that there is a written agreement would, when applied with the doctrine of mutuality, seem to give rise to the anomalous result that a taxpayer can extend the statute of limitations on refunds at will merely by filing offers in compromise: if the United States did not act, the taxpayer might argue estoppel and if the United States rejects the offer, it is agreeing to an extension of time for the taxpayer. Even if there is no merit to the estoppel argument, the result would be undesirable if the only way that the government could avoid an extension of the statute of limitation on refunds would be by not giving a reply to the offer in compromise. However, the United States can return the offer in compromise without considering it—as it did in this case. Letter from Gordon S. Kroger, Acting District Director, to Daniel O. Hastings, Esquire, dated 12/23/60. When the offers were so rejected, there would be no written agreement to satisfy the requirement of § 276(b) and § 6501(c) (4).

**116**

ton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619 (1933); United States v. Henry Prentiss & Co., 288 U.S. 73, at 83, 53 S.Ct. 283, 77 L.Ed. 626 (1933); 10 Mertens, Law of Federal Taxation § 58.18 at 43–44 (1964).

Fourth, and finally, I do not find that this is a proper case for equitable recoupment. See Note, 44 Va.L.Rev. 981 (1958).

█ In conclusion, summary judgment for Senger for refund of all liability arising out of the assessment of the 100% penalty is granted, free of the bar of the statute of limitations to the extent outlined above. Interest should be paid in accordance with 1939 IRC § 3771. An order should be entered accordingly.

█ In its counterclaim, the United States seeks a judgment for $30,290.29, the amount still unpaid on the original assessment. However, I see no need for the United States to have judgment. It can enforce its assessment without a judgment. In addition, there is no danger of the statutory period on collections expiring since the United States has overcollected. Therefore, I am not inclined to grant the motion for summary judgment on the counterclaim.

