**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Nelle A. HOPER et al., Defendants-Appellees.**

**No. 11909.**

United States Court of Appeals Seventh Circuit.

March 20, 1957.

Robert Tieken, U. S. Atty., Chicago, Ill., Charles K. Rice, Asst. Atty. Gen., Kenneth E. Levin, Attorney, U. S. Department of Justice, Washington, D. C., Lee A. Jackson, A. F. Prescott, Attorneys, Department of Justice, Washington, D. C., Donald S. Lowitz, Asst. U. S. Atty., Chicago, Ill., for appellant.

Jack Arnold Welfeld, Chicago, Ill., Donald H. Sanborn, Chicago, Ill., for appellees.

Before LINDLEY and SWAIM, Circuit Judges, and WHAM, District Judge.

SWAIM, Circuit Judge.

This is an action to enforce a lien of the United States for income tax upon the property of the delinquent taxpayer to the payment of such tax. The

question presented is whether a government lien for delinquent income taxes obtained pursuant to Section 3670, 26 U.S.C.A. (I.R.C.1939), in the lifetime of the taxpayer against the taxpayer's interest in life insurance policies on his life, i. e., their cash surrender values, the policies not being payable to the taxpayer or his estate, survives his death as against the designated beneficiaries. The policies in question were purchased by the taxpayer who paid all of the premiums on the policies and retained the right to change the beneficiary, the right to assign the policies, the right to borrow on the policies and the right to the cash surrender value of the policies.

The District Court was of the opinion that, since the right to the cash surrender values came to an end with the taxpayer's death, the lien did not attach to the proceeds in the hands of the beneficiaries to the extent of the cash surrender values which were available to the taxpayer immediately prior to his death. This holding is contrary to the decision of the Court of Appeals for the Second Circuit in United States v. Behrens, 230 F.2d 504, affirming D.C.E.D.N.Y., 130 F.Supp. 93, certiorari denied 351 U.S. 919, 76 S.Ct. 709, 100 L.Ed. 1451. The facts in that case for all relevant purposes are the same as those here and, with the exception of certain matters hereinafter discussed, the court considered the same contentions which the defendants advance here. We agree with the analysis and result in the Behrens case and no useful purpose would be served by any elaboration on the views expressed therein.

Defendants attempt to distinguish the Behrens case on the ground that the decedent-taxpayer there was insolvent prior to his death and his estate was insolvent after his death, whereas the decedent-taxpayer here was solvent prior to his death and his estate was solvent after his death. The simple answer to this is that, except as to questions of priority that might have arisen had the taxpayer or his estate been insolvent, R.S. § 3466, 31 U.S.C.A. § 191, the tax-

payer's solvency or insolvency is not legally relevant where the government is enforcing a tax lien against property which has been transferred gratuitously after the lien has attached. Defendants have confused the present proceeding with the situation that would exist were the government trying to subject defendants to liability enforceable against them as transferees under Section 311, 26 U.S.C.A. (I.R.C.1939). See 9 Mertens, Law of Federal Income Taxation §§ 53.-10, 53.36 (1943). This difference results from the nature of the two remedies, although both afford the legal mechanics for the collection of delinquent taxes. Transferee liability is predicated upon the obligation of the transferee at law or in equity to discharge the liability of the taxpayer-transferor to the extent of the property received. 26 U.S.C.A. (I.R.C.1939) § 311(a) (1). Liability in equity exists where, for example, the taxpayer disposes of his assets without receiving adequate consideration and the transfer leaves the taxpayer insolvent and unable to meet his tax liability, or the taxpayer was insolvent at the time of the transfer. Since a solvent individual may dispose of his assets as he sees fit, recovery is conditioned upon a showing that the taxpayer was insolvent and that the transfer was therefore to the detriment of the rights of the tranferor's creditors. See Tyson v. Commissioner of Internal Revenue, 6 Cir., 212 F.2d 16. But see United States v. Bess, D.C.N.J., 134 F.Supp. 467. Liability at law exists where, for example, the transferee agrees to pay the obligations of the taxpayer-transferor. See Shepard v. Commissioner of Internal Revenue, 7 Cir., 101 F.2d 595, certiorari denied 307 U.S. 639, 59 S.Ct. 1037, 83 L.Ed. 1520. In this latter situation, however, it is not necessary that there be a showing of the insolvency of the taxpayer-transferor. See Helvering v. Wheeling Mold & Foundry Co., 4 Cir., 71 F.2d 749; American Equitable Assur. Co. of New York v. Helvering, 2 Cir., 68 F.2d 46.

But in the instant case the lien liability is based upon the government's legal

claim upon the property of the delinquent taxpayer until the tax debt is discharged and the property therefore passes into the hands of a subsequent party subject to the lien regardless of the transferee's status as donee, mortgagee, creditor or purchaser. 26 U.S.C.A. (I.R.C.1939) §§ 3670, 3671, 3672(a); Michigan v. United States, 317 U.S. 338, 63 S.Ct. 302, 87 L.Ed. 312. The only condition to the enforcement of this right is that the government have a valid lien. Defendants also insist that the government failed to exhaust its legal remedies against the taxpayer during his lifetime and is therefore precluded from recovering in this action. Again the defendants have confused and failed to distinguish the nature of this proceeding with the remedy afforded by Section 311. Since transferee liability in most instances is derivative, recovery against a transferee is conditioned, in part, upon the exhaustion of remedies against the taxpayer-transferor whose liability is primary. See 9 Mertens, Law of Federal Income Taxation § 53.29 (1943). But the exhaustion of remedies as with the taxpayer's solvency or insolvency is foreign to the issues presented by a proceeding to enforce a government tax lien.

Furthermore, the government did exhaust its remedies against the taxpayer while he lived. The taxes were assessed against him on March 14, 1947, and demand for payment was made on April 18, 1947. On May 11, 1947, the taxpayer died. Thereafter, on June 8, 1948, the government filed a claim against his estate. The government did not, however, exercise its authority to collect the taxes by distraint and sale of the taxpayer's property. 26 U.S.C.A. (I.R.C.1939) §§ 3690, 3700. Assuming equitable considerations have some place in this proceeding, surely the sudden death of the taxpayer cannot be held against the government and inure to the benefit of defendants. Nor is there anything inequitable or arbitrary about the government's pursuing the defendants to collect the taxpayer's

delinquent taxes. The Probate Court allowed the claim of the United States for the taxes against the taxpayer's estate. But after the payment of administration expenses in the amount of $30,573.86, only $3,560.72 was available to be applied to the discharge of the $43,091.98 tax liability. The only remaining assets were the surrender values of the taxpayer's insurance policies.

■ Defendants next insist that as against them the lien which attached to the taxpayer's assets during his lifetime was not perfected because notice thereof was filed on October 24, 1947, subsequent to the payment of the proceeds of the insurance policies to the beneficiaries by the respective insurers. They rely on Section 3672(a), 26 U.S.C.A. (I.R.C.1939), which provides that liens shall not be valid as against any mortgagee, pledgee, purchaser or judgment creditor until notice thereof has been filed by the collector. They claim that beneficiaries receiving the proceeds of insurance policies take as purchasers under the law of Illinois. See People, Use of Brooks, v. Petrie, 191 Ill. 497, 61 N.E. 499. In the first place, the proceeds of certain of the policies were paid to defendants as beneficiaries on June 3, 1948, which was subsequent to the filing of the notice. Secondly, the determination of who is a purchaser within the meaning of Section 3672 is a federal question, and state decisions and statutes providing that certain acquisitions of property shall be deemed "purchases" are not controlling. United States v. Scovil, 348 U.S. 218, 75 S. Ct. 244, 99 L.Ed. 271; United States v. Hawkins, 9 Cir., 228 F.2d 517. The Supreme Court stated in United States v. Scovil, 348 U.S. at page 221, 75 S.Ct. at page 247, that a "purchaser within the meaning of § 3672 usually means one who acquires title for a valuable consideration in the manner of vendor and vendee." And in United States v. Hawkins, 228 F.2d at page 519, the court stated that: "Purchaser here [§ 3672] means buyer no matter

who may be given the rights of a purchaser under state law." So defined, defendants are clearly without the scope of "purchaser" as used in Section 3672, for the taxpayer paid the premiums on the policies in question and there is no evidence or claim that defendants contributed anything thereto.

Along similar lines, defendants insist that their liability is wholly dependent upon state law and that Ill. Rev.Stat. (1955) c. 73, § 850, exempts insurance proceeds from execution, attachment, garnishment or other process for collection of debts or liabilities of the insured. If the government were proceeding under Section 311, 26 U.S.C.A. (I.R.C.1939), against defendants on the theory of transferee liability the exemption statute might well be entitled to consideration, see Rowen v. Commissioner of Internal Revenue, 2 Cir., 215 F.2d 641; United States v. New, 7 Cir., 217 F.2d 166, but exemptions provided by state law are ineffective against the statutory lien of the United States for federal taxes. Knox v. Great West Life Assur. Co., 6 Cir., 212 F.2d 784; United States v. Heffron, 9 Cir., 158 F.2d 657, certiorari denied 331 U.S. 831, 67 S.Ct. 1510, 91 L.Ed. 1845. This distinction is clearly stated in United States v. Behrens, 2 Cir., 230 F.2d 504, 506, and by the District Court in the same case at 130 F.Supp. 93, 96.

Defendants' next point seems to be that the District Court's decision that the government's claim for taxes against the taxpayer did not constitute a lien against the insurance proceeds or the cash surrender value of such policies in the hands of the beneficiaries is a finding of fact and consequently cannot be set aside unless clearly erroneous. A simple reading of the District Court's memorandum opinion and conclusions of law reveals the fallaciousness of the premise on which the argument is based. In its memorandum opinion the court stated:

"As to the Government's contention that the lien has now attached to the proceeds of the insurance policies to the extent of their cash surrender value as of the date of the taxpayer's death, this Court, with due respect to eminent authority to the contrary [presumably the Behrens case], does not agree with the theory." [144 F.Supp. 281]

And Conclusion of Law No. 3 reads as follows:

"The lien of the United States for taxes assessed against Carl Hoper, which during his life attached to the cash surrender value of the insurance policies owned by him, did not survive his death."

It is hardly necessary that we point out that these are not findings of fact, but are conclusions of law whose correctness is a matter on which this court must exercise its independent judgment.

The taxpayer's liability in this case is based upon the disallowance of a family partnership by the Commissioner. Income derived from the partnership's business activities, which otherwise would have been taxable to certain limited partners, was attributed to the taxpayer. Except for the allowance of the tax claim against the estate of the taxpayer by the Probate Court of Cook County, Illinois, there has never been a judicial determination of the legality of the Commissioner's action and the resulting tax liability. The defendants in the proceeding below sought to show the validity of the partnership for federal tax purposes, but the District Court upheld the government's contention that by reason of the allowance of the tax claim against the taxpayer's estate by the Probate Court the claim is *res judicata*. Defendants have not cross-appealed from this determination nor have they questioned its correctness or argued that it is erroneous, but have proceeded here to argue the merits of the tax claim. Needless to say, they have put the proverbial cart before the horse. The District Court, in view of its determination that the doctrine of *res judicata* precluded inquiry into the merits

of the tax claim, never reached the merits, and obviously the merits never will be reached unless the District Court was in error. The government, evidently as confused as we are by the obliqueness of defendants' argument, has not tried to support the District Court's holding on this point. Thus this court does not have the benefit of respective counsel's argument and briefs on the question of the applicability of the doctrine of *res judicata* to the facts of the instant case.

The liability of defendants, although dependent upon the government's tax lien, is based fundamentally upon the existence of a tax liability on the part of the taxpayer. If the defendants can prove that the taxpayer had no tax liability, it would follow that the asserted lien is without foundation in fact or in law and that the government could not succeed in this action. However, we agree with the District Court that the determination by the Probate Court of the personal tax liability of the decedent-taxpayer precludes consideration anew of the merits of his liability. Cf. Maryland Casualty Co. v. United States, 32 F.Supp. 746, 91 Ct. Cl. 203.

As noted above, on June 8, 1948, a proof of claim for the income taxes in question was filed in the taxpayer's estate. The claim was disputed and the estate was represented in the proceedings by the same counsel representing defendants in the instant case. The claim was allowed in full on January 24, 1952, and the balance of assets in the amount of $3,560.72 remaining after the payment of administrative expenses was paid to the government in partial satisfaction of the $43,091.98 tax claim.

The allowance of a claim against a decedent's estate in the Probate Court is a judgment, and the adjudication of allowance is final and conclusive on the parties as to the matters in dispute unless the judgment is reversed or set aside on appeal or review. United States v. Paisley, D.C.N.D.Ill., 26 F. Supp. 237; Sinnickson v. Perkins, 137 Ill.App. 10, affirmed 231 Ill. 492, 83 N.E. 194. Since no appeal was taken and the time therefor has expired, the decree has become final and cannot be collaterally attacked. Moore v. Sievers, 336 Ill. 316, 168 N.E. 259; People, for use of Stough v. Danforth, 293 Ill.App. 280, 12 N.E.2d 227. Defendants in their capacity as beneficiaries of the life insurance policies are successors in interest of the taxpayer to the extent of the cash surrender values. There is therefore in this situation the requisite privity and defendants are consequently bound by the judgment of the Probate Court determining the taxpayer's liability and they took the cash surrender values subject to this liability. First National Bank of Chicago v. Commissioner of Internal Revenue, 7 Cir., 112 F.2d 260, certiorari denied 311 U. S. 691, 61 S.Ct. 72, 85 L.Ed. 447.

For the reasons set forth above, that part of the judgment of the District Court holding that the decedent-taxpayer's tax liability is *res judicata* is affirmed, and that part of the judgment holding that the tax lien did not attach to the cash surrender value of the insurance policies in the hands of the beneficiaries is reversed and the cause remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed in part and remanded.