333 F.2d 137
 UNITED STATES of America
v.
Anthony J. J. A. WILSON, Hedwig C. Wilson, Massachusetts Mutual Life Insurance Company and Travelers Insurance Company,
Massachusetts Mutual Life Insurance Company, Appellant.
 No. 13858.
 United States Court of Appeals Third Circuit.
 Argued April 5, 1963.
 Submitted October 12, 1963.
 Decided April 10, 1964.
 
 A. Peter Quinn, Jr., Springfield, Mass. (John P. Nugent, Jersey City, N. J., on the brief), for appellant Massachusetts Mut. Life Ins. Co.
 John B. Jones, Jr., and Joseph Kovner, Attys., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Michael A. Mulroney, Attys., Dept. of Justice, Washington, D. C., David M. Satz, Jr., U. S. Atty., on the brief), for appellee.
 Before BIGGS, Chief Judge, and McLAUGHLIN, KALODNER, STALEY, HASTIE, GANEY and SMITH, Circuit Judges.
 BIGGS, Chief Judge.
 
 
 1
 This action was brought by the United States under Section 7403 of the Internal Revenue Code of 1954,[1] to collect for unpaid income taxes by foreclosure of a tax lien on the interest of delinquent taxpayer, Anthony Wilson, in certain unmatured insurance policies. Defendants in the proceeding below were the taxpayer, his wife, the Travelers Insurance Company, and the Massachusetts Muutal Life Insurance Company ("Massachusetts Mutual"). From adverse determinations in the court below, the insurers have appealed on separate questions. The opinion on the appeal of the Travelers Insurance Company is filed concurrently herewith and is reported at 333 F.2d 147 (1964). The instant opinion is concerned solely with the appeal of Massachusetts Mutual. The issue presented is a basic question of law of which no substantial facts are in dispute. A complete recital of the circumstances is therefore unnecessary and for this purpose reference is made to the opinions of the court below reported at 182 F.Supp. 567 (1960), at 191 F.Supp. 69 (1961), and at 195 F.Supp. 332 (1961).[2]
 
 
 2
 The following discussion should be read in conjunction with this court's opinion in United States v. Sullivan, 3 Cir., 333 F.2d 100 (1964), filed concurrently with this opinion, as both cases involve the same basic problem and the reasoning and views adopted in Sullivan substantially control the disposition of the present controversy.
 
 
 3
 The operative facts of the instant appeal are not disputed. In March 1942 Wilson purchased a life insurance policy from Massachusetts Mutual, No. 1,468,657, in the face amount of $10,000. In September 1946 Wilson purchased a retirement income policy from Massachusetts Mutual, No. 1,615,476, in the face amount of $20,000. Premiums were to be paid for the life of the insured under the life insurance policy and for a period of twenty-five years under the retirement income policy.
 
 
 4
 It is unquestioned that the policies were substantially identical in all respects material to this appeal. Under each of the policies Wilson was the named insured and his wife was the primary beneficiary. Wilson had the right to change the beneficiary, to exercise all options, and to take part in dividend sharing plans.[3] Wilson elected under both policies to have dividends left with the company to accumulate at interest. Outstanding dividends were to be added to the cash value of the policies in the event of surrender of the policies for their cash surrender values,[4] discussed infra.
 
 
 5
 The aspects of the policies germane to the present controversy were those relating to cash value and cash surrender value. Generally speaking, and with regard to each of the policies, at any particular time the total amount paid in on the policy less its accrued cost of maintenance but plus for present purposes the sum accumulated on account of dividends constituted the cash value of the policy. The cash value less any out-standing policy indebtedness to the insurer represented the policy's cash surrender value. The cash surrender value was the amount the insured was entitled to receive when pursuant to and in accordance with the policy provisions set out hereafter, he elected to surrender the policy for cancellation.
 
 
 6
 Each of the policies provided that it would remain in effect for a grace period of thirty-one days after a premium default. Within sixty-two days of a premium default the insured had the right to choose one of the following substantially identical non-forfeiture options:[5] first, to surrender the policy and, with the written assent of the beneficiary, to receive its cash surrender value; second, to take participating paid-up insurance in the amount which the cash surrender value of the policy would purchase; or third, to take participating extended term insurance for such term as the cash surrender value would purchase. In his insurance applications Wilson elected respectively, the extended term insurance option with regard to the life insurance policy and the paid-up insurance option as to the retirement income policy. The policies provided that in the case of conversion to paid-up or extended term insurance, the policies would continue to have a cash surrender value and that this sum would be obtainable as above, i. e., by surrender of the policy and submission of the written assent of the beneficiary.
 
 
 7
 Each of the policies also contained an identical, optional provision relating to automatic premium loans. On November 21, 1946 Wilson elected under both policies to have this clause become operative in the event of premium default. The automatic premium loan provision read as follows: "Automatic Premium Loan: If the Automatic Premium Loan provision shall have been elected by the insured and proper notice thereof shall have been filed with the Company at its Home Office prior to the expiration of the grace period of any unpaid premium, the Company will, upon the last day of the said grace period and after first applying dividend accumulations to the payment of such premium, automatically loan the amount required to pay such premium, or the unpaid balance thereof, and charge the same as indebtedness against the policy bearing interest at the rate of five per cent. per annum, payable annually, not in advance, provided that the policy be sufficient security for such loan as hereinafter stipulated. If the policy is not sufficient security for such loan, the Company will, on the same terms, automatically loan the next smaller installment of premium shown by the policy, or the unpaid balance thereof, for which the policy shall be sufficient security, and thereafter the premium on this policy shall be payable in like installments. In no case will the Company loan an amount less than a quarterly installment of premium unless the balance of said installment shall have been paid prior to the expiration of the grace period.
 
 
 8
 "If this provision is elected it will continue to be operative until revoked by the insured upon receipt of proper notice thereof at the Company's Home Office."
 
 
 9
 Substantially identical, relevant, interrelated clauses of the policies followed the "Automatic Premium Loan" provision. Those of the life insurance policy read as follows: "Sufficient Security for Loans: The policy will be sufficient security for any * * * Automatic Premium Loan if the amount of the existing indebtedness on the policy plus the amount of the proposed loan, with interest on both amounts at the rate of five per cent. per annum to the due date of the next premium (or to the next anniversary of the policy if no further premium be payable), does not exceed the cash value of the policy and of all paid-up additions thereto on the said due date (or on the said next anniversary).
 
 
 10
 "Miscellaneous Provisions Applicable to Loans: Overdue interest on any indebtedness hereunder shall be added to the existing indebtedness and bear interest on the same terms.
 
 
 11
 "The whole or any part of any outstanding indebtedness may be repaid at any time. While any premium loan, made automatically or otherwise, is outstanding, dividends as they become due and payable shall be used to reduce such loan. Failure to repay a loan, or to pay interest thereon, shall not avoid the policy until such time as the total indebtedness thereon, including accruing interest, shall equal or exceed the then cash value of the policy nor until thirty-one days after notice has been mailed by the Company to the last known address of the insured and any assignee of record at the Home Office of the Company."
 
 
 12
 Wilson at no time revoked his election regarding the operation of the automatic premium loan provision of either policy.
 
 
 13
 On June 6 and June 12, 1947 and on October 14, 1949, the Commissioner of Internal Revenue made income tax assessments in the total amount of $45,441.24 against Wilson for deficiencies for the years 1944 through 1947. The District Collector received the respective assessment lists on June 6, 1947, on June 16, 1947, and on October 19, 1949, on which dates he vainly demanded payment from Wilson. As a result of each of these several demands and refusals, a tax lien arose under Section 3670 of the Internal Revenue Code of 1939[6] against Wilson's "property and rights to property" including his interest in the insurance policies.[7] Additionally, after March 15, 1948 and before and on December 13, 1949, notice of lien was filed of public record, for present purposes in assumed compliance with Section 3672, Internal Revenue Code of 1939.[8]
 
 
 14
 On February 2, 1950 Massachusetts Mutual was served with a "notice of levy"[9] under the purported authority of Sections 3690, 3692 and 3710, Internal Revenue Code of 1939.[10] The company seemingly took no action in response to this notice. The document served upon Massachusetts Mutual was apparently never introduced into the record in the proceedings below and its contents will therefore not be considered or set out here. It is sufficient to say at this time that the content of the notice is immaterial to the view hereafter expressed in this opinion. The date of the service of notice of levy does appear in the record as set out at the beginning of this paragraph.
 
 
 15
 Thereafter, in December, 1950 in respect to the retirement income policy and in June, 1953 with regard to the life insurance policy, Wilson totally defaulted in the payment of premiums. Accordingly, pursuant to the automatic premium loan provisions of the policies and notwithstanding the notice served upon it, Massachusetts Mutual proceeded on appropriate dates apparently until September 12, 1961, the date on which judgment was entered in the court below, to apply accrued dividends to the amounts outstanding on premiums and to effectuate automatic premium loans on the balances.
 
 
 16
 The present controversy is focused upon the question of whether Massachusetts Mutual was legally entitled as against the Commissioner to act as indicated.[11] The court below ruled that the time the tax lien first attached to Wilson's property interests, i. e., the date of the initial vain demand for payment from Wilson, June 6, 1947, it also attached to the then existing cash surrender values, if any, of the policies as held by Massachusetts Mutual and that thereafter the value of the Government's interest could be enhanced but not effectively diminished. Accordingly, judgment was entered in favor of the United States and against Massachusetts Mutual for $15,343.60 with regard to the retirement income policy and for $3,352.28 in respect to the life insurance policy. These sums encompassed the values of the policies determined as of June 6, 1947 and subsequent additions thereto by way of dividends and premiums embracing as part of the latter, notwithstanding the fact that no setoff was allowed, increments brought about by premiums paid by means of automatic premium loans.[12]
 
 
 17
 On appeal the Government has changed its position to some degree. It has abandoned the position which was upheld by the trial court, that the date the tax lien attached to Wilson's policy interests was determinative of its rights regarding automatic premium loans, now conceding that such attachment could not in itself have rendered inoperative the automatic premium loan provisions of the policies. It contends, however, that the date of service of notice of levy upon Massachusetts Mutual was controlling for this purpose on the hypothesis, to quote its brief, that notice of levy "is a formal notice to the insurer that the automatic premium loan provision is revoked and a demand under the terms of the contract for the cash surrender value."[13] Massachusetts Mutual argues that service of notice of levy does not have the legal effects postulated and that the Government is entitled only to the cash surrender values of the policies determined as of the time of the judgment below.
 
 
 18
 The questions raised on this appeal have been for the most part decided by this court's opinion in United States v. Sullivan, supra, and reference is made to that decision for an over-all perspective regarding the present problem. To summarize briefly the pertinent aspects of the Sullivan case, it involved a foreclosure action by the United States on a delinquent taxpayer's interest in substantially similar unmatured insurance policies. Notice of levy had been served upon two insurers and subsequently the companies had proceeded to effect automatic premium loans in accordance with the terms of their policies. In that case, however, unlike the present one, prior to judgment in the proceeding below and pursuant to stipulation, the policies in question were voluntarily surrendered, and releases were executed to the insurers. The essential issues raised in Sullivan were nevertheless identical to those posed here. This court in Sullivan rejected the contentions that as against the insurers the Government's recovery with respect to the values of typical unmatured insurance policies was determined as of the date of the attachment of the tax lien to the delinquent-insured's policy interests and that the service of notice of levy on the companies constituted a valid demand for the cash surrender values and acted as an effective revocation of the operation of the automatic premium loan clauses. Additionally, we rejected the claim that service of process after commencement of suit had these latter effects. We therefore affirmed the judgment of the court below granting recovery of the cash surrender values of the policies determined as of the date of their surrender and release, and interest measured from those times.
 
 
 19
 In light of our rulings in Sullivan, it is clear in the present case that the determination of the court below was erroneous and that the position of the Government on this appeal is ill-founded. The bases for these conclusions are set out in detail in the Sullivan opinion and will not be reiterated here. The Sullivan decision, however, is not directly dispositive of the appeal at bar inasmuch as a release was never executed in the instant case.
 
 
 20
 The essential basis of the Sullivan opinion was such, however, that it is nonetheless controlling here. Manifest in the decision was the view that but for the surrender and release of the policies the Government would have been entitled to recover the policies' cash surrender values determined as of the time of an appropriate order of court. This is evident because, as a practical matter, all of the other reasonably conceivable basis of recovery were there squarely eliminated. And, more fundamentally, the whole rationale of Sullivan was that during the executory phase of the policies' existence, the Commissioner was not empowered by statutory levy to exercise unilaterally either the delinquent's right to cancel the contracts and receive the cash surrender values or his right to revoke the operation of the automatic premium loan provisions, and that absent relinquishment or transferal of these powers or levy upon the insurance contract, only judicial action could effectively alter and extinguish the tripartite contractual relationship.
 
 
 21
 In the instant case the court below had jurisdiction in the cause and judgment was entered on September 12, 1961. This judgment while erroneous in amount, nevertheless, on the basis of the above reasoning, served to determine the policies' cash surrender values as of that time and to fix the measure of the Government's recovery.[14] Accordingly, the Government is entitled to the policies' cash surrender values so determined plus interest from the same date.
 
 
 22
 The policies' cash surrender values, however, as of September 12, 1961 do not appear from the record, though they are seemingly included in the "Tabulation of Information re Life Insurance Policies" set out as an appendix to the opinion in United States v. Sullivan, supra, 333 F.2d p. 123, and incorporated in this opinion by reference.[15] A new trial must therefore be granted to ascertain the proper award due the Government. This amount could be determined from the "Tabulation," with appropriate interest.
 
 
 23
 We have considered the other points raised by the parties and are of the view that further discussion is not required.
 
 
 24
 The judgment against Massachusetts Mutual Life Insurance Company will be vacated and a new trial will be ordered.
 
 
 25
 HASTIE, J., dissents for the reasons stated in his dissenting opinion in United States v. Sullivan, 333 F.2d 121.
 
 
 
 Notes:
 
 
 [1]
 Section 7403 is entitled "Action to enforce lien or to subject property to payment of tax" and provides as follows:
 "(a) Filing. — In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary or his delegate, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability.
 "(b) Parties. — All persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto.
 "(c) Adjudication and decree. — The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.
 "(d) Receivership. — In any such proceeding, at the instance of the United States, the court may appoint a receiver to enforce the lien, or, upon certification by the Secretary or his delegate during the pendency of such proceedings that it is in the public interest, may appoint a receiver with all the powers of a receiver in equity."
 
 
 [2]
 An appeal by Wilson from the judgment below contesting his tax liability on the ground of statute of limitations has previously been decided adversely to the taxpayer by this court at 304 F.2d 530 (1962) (per curiam)
 
 
 [3]
 The dividend provision of the life insurance policy was representative: "Upon payment of the premium for the full second policy year, and at the end of the second and each subsequent policy year, this policy while in force will be credited with such share of the surplus funds of the Company as may be apportioned hereto by the directors, such apportioned shares being designated herein as dividends. At the option of the insured, except while this policy is in force as extended term insurance or while any premium loan, made automatically or otherwise, is outstanding, dividends will be (1) paid in cash, or (2) applied in reduction of premiums, or (3) used to purchase participating paid-up additions, payable with the sum insured, or (4) held by the Company to accumulate subject to withdrawal on demand. Paid-up additions will have a cash surrender value (full reserve), but the Company may, at its option, defer the granting of such surrender value for a period not exceeding ninety days from the date of the application therefor. Dividend accumulations will be credited at the end of each policy year with interest at such rate, not less than two and one-half per cent., as may be determined by the directors. Outstanding dividend accumulations will be added to the cash value of the policy in the event of surrender or to the amount payable under the policy if it becomes a claim by death or matures as an endowment. If no election is made prior to any anniversary, the dividend due on that anniversary will be held by the Company to accumulate."
 
 
 [4]
 As we have said in the equally applicable discussion in United States v. Sullivan, supra, at note 8, no question is validly posed on appeal concerning the possibility of a distinct right of recovery on the part of the Government for dividends because no such issue was raised either during the proceedings below or before this court. We call attention to what we have stated in this regard in note 8 of the Sullivan opinion
 
 
 [5]
 For present purposes the pertinent provisions of the life insurance policy are representative: "Options in Case of Default: After two full years' premiums have been paid on this policy, the insured, within sixty-two days after the due date of the first premium in default, may elect by writing filed with the Company at its Home Office:
 "Cash Surrender Value: (a) To surrender the policy and, with the written assent of the person to whom it is made payable, receive the value of the policy and of any paid-up additions in cash, but the Company may, at its option, defer the payment of such cash value for a period not exceeding ninety days from the date of the application therefor, or
 "Participating Paid-Up Insurance: (b) To take participating paid-up insurance, payable at the same time and on the same conditions as in this policy, of such an amount as the cash value of the policy and of any paid-up additions at the date of default, less any indebtedness hereon, will purchase as a net single premium at the attained age of the insured at the date of default, according to the American Experience Table of Mortality with interest at the rate of three per cent. per annum, or
 "Participating Extended Term Insurance: (c) To have the insurance continued in force as participating extended term insurance beginning on the date to which premiums have been paid, for its face amount, plus any paid-up additions and less any indebtedness to the Company hereon. The term for which this policy will be continued as extended insurance is such as the cash value of the policy and of any paid-up additions, less any indebtedness, will purchase as a net single premium at the attained age of the insured, on the date to which premiums have been paid, according to the American Experience Table of Mortality with interest at the rate of three per cent. per annum. No provision herein shall operate to continue this policy in force beyond the term for which it was originally written. Dividends to the credit of this policy at the time of lapse or any dividends which may be apportioned hereto while this policy is continued as extended term insurance shall not be applied to continue this policy in force beyond the term of extension, but shall be paid in cash.
 "If no election is made, reduced paid-up insurance shall be automatically binding upon the Company."
 
 
 [6]
 Section 3670 provides as follows:
 "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."
 
 
 [7]
 What qualifies as "property" or "rights to property" is, of course, to be determined by state law. See United States v. Durham Lumber Co., 363 U.S. 522, 80 S. Ct. 1282, 4 L.Ed.2d 137 (1960). It is unquestioned that the law of New Jersey is applicable to the case at bar. Wilson clearly had a sufficient interest in the policies under that law to have satisfied the requirements of the statute. See United States v. Bess, 357 U.S. 51, 55-57, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958). See also note 20 cited to the text in United States v. Sullivan, supra
 
 
 [8]
 Section 3672 in pertinent part provides:
 "(a) Invalidity of lien without notice. Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector —
 "(1) Under State or Territorial laws. In the office in which the filing of such notice is authorized by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law authorized the filing of such notice in an office within the State or Territory; * * *"
 As to our assumption on the validity of the filing, see the equally applicable discussion in note 5 cited to the text in United States v. Sullivan, supra.
 
 
 [9]
 In the tabulation of events and dates attached as an appendix to our opinion in United States v. Sullivan, supra, and made a part of the opinion in the instant case by reference as stated in note 15infra and as indicated in Sullivan, dates of service of two subsequent notices of levy against Massachusetts Mutual are designated. Insofar as we can ascertain, these dates are not in the record. These facts are unnecessary, however, for our decision.
 
 
 [10]
 Section 3690 is entitled "Authority to distrain" and provides as follows: "If any person liable to pay any taxes neglects or refuses to pay the same within ten days after notice and demand, it shall be lawful for the collector or his deputy to collect the said taxes, with such interest and other additional amounts as are required by law, by distraint and sale, in the manner provided in this subchapter, of the goods, chattels, or effects, including stocks, securities, bank accounts, and evidences of debt, of the person delinquent as aforesaid."
 Section 3692 is entitled "Levy" and provides as follows: "In case of neglect or refusal under section 3690, the collector may levy, or by warrant may authorize a deputy collector to levy, upon all property and rights to property, except such as are exempt by the preceding section, belonging to such person, or on which the lien provided in section 3670 exists, for the payment of the sum due, with interest and penalty for nonpayment, and also of such further sum as shall be sufficient for the fees, costs, and expenses of such levy."
 Section 3710 is entitled "Surrender of property subject to distraint" and provides in pertinent part as follows:
 "(a) Requirement. Any person in possession of property, or rights to property, subject to distraint, upon which a levy has been made, shall, upon demand by the collector or deputy collector making such levy, surrender such property or rights to such collector or deputy, unless such property or right is, at the time of such demand, subject to an attachment or execution under any judicial process.
 "(b) Penalty for violation. Any person who fails or refuses to so surrender any of such property or rights shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of the taxes (including penalties and interest) for the collection of which such levy has been made, together with costs and interest from the date of such levy."
 The above-quoted sections are for present purposes substantially identical to the corresponding provisions of the 1954 Code, Sections 6331 and 6332, set out and discussed in United States v. Sullivan, supra.
 
 
 [11]
 With respect to the amount in dispute, reference is made to the equally pertinent discussion in United States v. Sullivan, supra, at note 18 and accompanying text
 
 
 [12]
 We have pointed out the import of such an award in United States v. Sullivan, supra, at note 18
 
 
 [13]
 Brief for Appellee, p. 40
 
 
 [14]
 The "order entering judgment" of the court below provided in pertinent part as follows:
 It is further ORDERED that the Federal tax lien hereinbefore referred to be and is foreclosed against the cash surrender value accrued upon each of the three afore-mentioned insurance policies;
 "And it is further ORDERED that defendant Massachusetts Mutual Life Insurance Company pay to the plaintiff, the United States of America, the sum of fifteen thousand three hundred forty-three dollars and sixty cents ($15,343.60) representing the gross cash surrender value of policy number 1,615,476, accrued to August, 1961; and also pay to the plaintiff the sum of three thousand three hundred fifty-two dollars and twenty-eight cents ($3,352.28), representing the gross cash surrender value of policy number 1,468,657, accrued to August, 1961;"
 * * * * *
 "ORDERED that the defendants Anthony J. J. A. Wilson and Hedwig C. Wilson execute and deliver to the respective insurers any and all documents including the surrender of the policies, requisite to effectuate the relinquishment and discharge of all right, title and interest of each and both of said defendants Wilson in and to the said insurance policies, the gross cash surrender value accruing upon each thereof and the proceeds of the same, as by the terms of the respective policies each insurer is entitled to receive as conditions precedent to the payment of the cash surrender value of the said policies, said acts to be performed by the defendants Wilson within thirty (30) days from the date of the entry of this Order, and
 "It is further ORDERED that upon the failure, neglect, or refusal of Anthony J. J. A. Wilson and Hedwig C. Wilson to perform the aforesaid act or acts necessary to effectuate the payment of the gross cash surrender value by the insurance carriers to the plaintiff within thirty (30) days from the date of entry of this Order, then and in that event it is the Order of this Court that Anthony J. J. A. Wilson and Hedwig C. Wilson shall execute and deliver to the insurance carriers within the same thirty-day period the requisite document or documents designating the plaintiff, the United States of America, as beneficiary of the aforementioned insurance policies; and be it
 "FURTHER ORDERED that in the event that Anthony J. J. A. Wilson and Hedwig C. Wilson refuse, fail or neglect to comply with the provisions of this Order directing them to either execute and deliver the requisite documents as required by the insurance carriers as conditions precedent to the payment of the gross cash surrender value of the policies within thirty (30) days of the date of entry of this Order, or alternatively, to execute and deliver within the same period of time the requisite document or documents designating the plaintiff, the United States of America, as beneficiary of the insurance policies, then and in that event this Order shall stand as a judgment directing the defendants Massachusetts Mutual Life Insurance Company and the Travelers Insurance Company, to pay to the plaintiff the gross cash surrender value accrued upon each of said policies from the 6th of June, 1947, to date of payment, without any deductions for loans or for any other transaction or transactions by and between the insurers, the insured and the beneficiary, and for compliance with this Order the insurers shall be held without fault or liability to Anthony J. J. A. Wilson, Hedwig C. Wilson, their heirs, assigns or estates; all without costs."
 
 
 [15]
 The "Tabulation of Information re Life Insurance Policies" is incorporated in the opinion in this case as an appendix by reference to the opinion in the Sullivan case. The "Tabulation," we think, should be made part of the record in this case on remand. It represents what is in effect a stipulation, prepared by the parties by the direction of this court. It contains, we believe, information which may be vital to a decision in this case as well as in the other cases involving the present problem on appeal at our Nos. 13,957, 14,091 and 14,092, if it should be concluded by the Supreme Court on subsequent review that some other theory or theories of law than those we have applied should govern the disposition of these cases. Certainly if this case or one or more of the other cases should go to the Supreme Court on certiorari, the data contained in the "Tabulation" should be made available. Those facts stipulated in the "Tabulation" which are enclosed by parentheses are not presently in the records of the respective cases. These facts can be made available upon remand simply by stipulation of the parties. This court, of course, cannot receive evidence
 It will be noted on examination of the "Tabulation" that September 1, 1961 is specified as the date of judgment in the court below. The record on its face indicates that the "order entering judgment" was filed on September 11, 1961 and judgment was entered on September 12, 1961. These are therefore the dates which must be considered determinative for purposes of our adjudication. But as we have indicated in note 41 cited to the text in the Sullivan opinion, what we have said is not intended to preclude the court below on remand from inquiring into the possibility of inaccuracy of the dates as presently listed or of making any other pertinent findings.