**UNITED STATES of America**

v.

John D. McWILLIAMS, Ethel McWilliams, Elizabeth McWilliams, Connecticut General Life Insurance Company, Mutual Benefit Life Insurance Company, Connecticut Mutual Life Insurance Company.

Civ. No. 8151.

United States District Court
D. Connecticut.

June 30, 1964.

Rehearing Denied Sept. 29, 1964.

118

F. Owen Eagan, Asst. U. S. Atty., Hartford, Conn., for plaintiff.

Curtiss Thompson, William M. Mack, Thompson, Weir & Barclay, New Haven, Conn., for John D., Ethel and Elizabeth McWilliams.

John Fassett, Frank E. Callahan, Wiggin & Dana, New Haven, Conn., for Conn. Gen. Life Ins. Co. and Conn. Mut. Life Ins. Co.

Edward Hennessey, III, Bruce W. Manternach, Robinson, Robinson & Cole, Hartford, Conn., for Mutual Benefit Life Ins. Co.

BLUMENFELD, District Judge.

This action is brought by the United States to obtain judgment against the defendant John McWilliams, the taxpayer, for certain outstanding and unpaid

assessments of federal tax liabilities and to foreclose tax liens arising from these assessments against certain policies of life insurance issued and outstanding on the life of the taxpayer. Joined as parties defendant are Ethel McWilliams, the taxpayer's wife, who is named as beneficiary of all three policies; his daughter, Elizabeth, who is named as contingent beneficiary in one of them; and the insurance companies who issued the policies.

Notices of the federal tax liens were filed in 1948 with the Town Clerk of Norwich, Connecticut, where the taxpayer lived. The tax claims were filed and allowed In the Matter of John D. McWilliams, Bankruptcy No. 24460; but the proceeding terminated on February 20, 1952, without producing any payment on those claims owing to insufficient assets. Next, the government served formal notices of its tax liens against the taxpayer's property upon the Connecticut Mutual Life Insurance Company on January 29, 1957, upon the Mutual Benefit Life Insurance Company on January 29, 1957, and upon the Connecticut General Life Insurance Company on February 18, 1957.

The Connecticut General Life and the Connecticut Mutual Life policies had been assigned by John D. McWilliams to his wife on November 14, 1956, in consideration of love and affection. This was after the government's liens were filed, but before the insurance companies received actual notice of those liens. The Mutual Benefit Life policy was never assigned and record ownership remains in the taxpayer.

After a motion for summary judgment was filed by the government and briefs and arguments by the parties were presented, the government requested, and all of the parties agreed, that the decision of the court on the motion should be postponed pending the decisions on appeal of several cases cited by the parties in their briefs which had reached conflicting results on issues similar to those presented here. Those cases have been decided. Supplemental briefs have

been filed. Further arguments have been heard.

The taxpayer does not contest the validity or amount of the government's claims against him. The issues presented concern the effectiveness of the government's liens as against Mrs. McWilliams, and the appropriate method for their enforcement.

*Attachment of the Liens—*
*Mrs. McWilliams' Interest*

■ Section 3670 of the Internal Revenue Code of 1939, 53 Stat. 448 (now Int. Rev.Code of 1954, § 6321), provides that if a person fails after demand to pay a tax due the United States, the amount of the tax "shall be a lien in favor of the United States upon *all property and rights to property,* whether real or personal, belonging to such person." (Emphasis added.) The lien "arise[s]" at the time the tax assessment is made, and "continue[s]" until the liability for the amount so assessed is either satisfied or becomes unenforceable by reason of lapse of time. Int.Rev.Code of 1939, § 3671, 53 Stat. 449 (now Int.Rev.Code of 1954, § 6322). From the moment of assessment, the lien is, in the words of § 3670, upon all of the taxpayer's property or rights to property. "Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes." Glass City Bank of Jeanette, Pa. v. United States, 326 U.S. 265, 267, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945). The lien covers all property existing at the time of assessment and all acquired *after* assessment. Glass City Bank v. United States, supra, 326 U.S. at 267, 66 S.Ct. 108. Its attachment and enforcement is unaffected by state exemption statutes. United States v. Bess, 357 U.S. 51, 57, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958); Knox v. Great West Life Assur. Co., 212 F.2d 784 (6th Cir. 1954).

■ It is not questioned that the policies are "property" or "rights to property" to which the lien attaches. Thus if the policies were owned by the taxpayer when the assessment was made, the assignments of two of the policies

to Mrs. McWilliams on November 14, 1956, subsequent to the dates of assessments and hence subsequent to the government's liens, are of no aid to her in establishing her ownership of the policies as against the government. "The transfer of property subsequent to the attachment of the lien does not affect the lien, for 'it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere * * *.' [cases omitted]." United States v. Bess, supra, 357 U.S. at 57, 78 S.Ct. at 1058; United States v. Hoper, 242 F.2d 468 (7th Cir. 1957); United States v. Behrens, 230 F.2d 504 (2d Cir.), cert. denied, 351 U.S. 919, 76 S.Ct. 709, 100 L.Ed. 1451 (1956).

But, Mrs. McWilliams contends that when the liens arose she, rather than the taxpayer, was and continues to be the owner of such property rights as there are in the three insurance policies. In order to raise an issue as to the material fact of ownership, Mrs. McWilliams relies on affidavits and her statements in her deposition that she was the beneficiary of the policies and in constant possession of the policies from the date of their issuance and that she made substantial, though undetermined, contributions toward the payment of premiums before the liens arose, as well as some $3000 since that date. Assuming that this was indeed the case, as I must for purposes of summary judgment, the question is whether this is sufficient in law to constitute ownership of the policies when the taxpayer enjoyed, at the dates on which the government liens arose, the right to change the named beneficiary, to borrow against the cash surrender values, to surrender each policy for cancellation in return for payment of surrender value plus any available dividends and the right to exercise other options under each of the policies.

 This question is to be determined by state law. In determining whether a taxpayer has "property" or "rights to property" to which the government's lien can attach, "both federal and state courts must look to state law."

Aquilino v. United States, 363 U.S. 509, 512–513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960). Since Connecticut is unquestionably the locus of the contract, the court will look to the law of that state. See United States v. Fried, 309 F.2d 851 (2d Cir. 1962); United States v. Burgo, 175 F.2d 196 (3d Cir. 1949).

 Connecticut recognizes the interest of a beneficiary of a life insurance policy as being vested though subject to defeasance by the owner where the latter retains his right to change the named beneficiary and does so in accordance with the terms of the policy. O'Connell v. Brady, 136 Conn. 475, 72 A.2d 493 (1950); Allen v. Home Nat'l Bank, 120 Conn. 306, 180 A. 498 (1935); Neary v. Metropolitan Life Ins. Co., 92 Conn. 488, 103 A. 661, L.R.A.1918F, 306 (1918). The beneficiary, however, has no legal right to compel the insurance company to strictly follow its agreed procedure with regard to the method of changing the beneficiary. Shaw v. John Hancock Mutual Life Ins. Co., 120 Conn. 633, 643, 182 A. 472 (1936). In the absence of a binding contract between the insured and the beneficiary whereby the latter agrees to pay the premiums in return for the proceeds when due, a beneficiary who pays premiums and maintains possession of the policy does not acquire thereby any legal right to the proceeds. See Bachrach v. Herrup, 128 Conn. 74, 20 A.2d 395 (1941). The payment of premiums does not necessarily give rise to an implied contract to pay the proceeds to the named beneficiary. Masonic Mutual Benefit Ass'n v. Tolles, 70 Conn. 537, 40 A. 448 (1898). See also United States v. Fried, 309 F.2d 851 (2d Cir. 1962) (applying New York law). Here, the interrogatories reveal that Mrs. McWilliams did not regard those payments of premiums she made as having been given as consideration for any contractual obligation on the part of her husband not to change the name of the beneficiary, and there is no indication that her possession of the policies was for the purpose of preventing the insured from changing the beneficiary. Compare Unit-

ed States v. Burgo, 175 F.2d 196 (3d Cir. 1949). If the payments of premiums may be regarded as giving rise to an equitable lien against the surrender value of the policies in favor of the beneficiary, see Bachrach v. Herrup, supra, 128 Conn. 74, 20 A.2d 395, such an equitable lien cannot defeat a federal tax lien. United States v. Morrison, 247 F.2d 285 (5th Cir. 1957).

The insured applied for these policies himself and was the sole record owner of all three policies at all times prior to the perfection of the government's liens. Compare United States v. Burgo, supra, 175 F.2d 196. There is no Connecticut authority that would give the beneficiary ownership rights in the policy. At the time the tax lien arose, the policies were owned by the taxpayer, and Mrs. McWilliams' possession of them amounted to nothing more than her holding of them in custody for her husband. To whatever extent the policies constituted "property" or "rights to property" they "belong[ed]" to the taxpayer.

### Enforcement of the Liens

There are three policies. The Connecticut Mutual Life policy is a fully paid up endowment policy maturing on August 1, 1966, for a face value of $1000, with a present cash surrender value plus accumulated dividends close to its face amount, all of which the government wants to obtain.

The Connecticut General Life policy, which is described as an "Insurance to Age 65—Monthly Income Contract," matured as an income payment contract on January 22, 1957. Prior to that time, the insured had several options, but since the company did not receive actual notice of the government's liens until February 18, 1957, the government concedes that it is bound by the option actually selected and exercised by the insured. It provides for monthly payments of $50 for a guaranteed period of 100 months and thereafter for the lifetime of the taxpayer, insured. The government concedes that it cannot now recover the cash value represented by the 2 monthly $50

payments actually paid to Mrs. McWilliams because they were paid before the company was in receipt of actual notice of the government's liens. After notice was received, the company withheld all payments under the policy. The government's former contention that, upon foreclosure of its liens, Connecticut General Life should be ordered to pay over to the government in one sum the commuted value of the entire contract—both the value of the guaranteed payments and the actuarial value of the contingent life payments—irrespective of any terms in the contract which limit commutation to the guaranteed payments only has been abandoned. It now seeks only an order directing that all right, title and interest in the contract be assigned to the government and that all accumulated and future payments thereunder be paid by Connecticut General Life to the government toward satisfaction of the tax liability underlying its lien.

With respect to the Mutual Benefit Life policy, however, the problem is more complicated. The government contends for the maximum cash and dividend value of the Mutual Benefit Life policy that accrued on or after receipt of actual notice by the company of the government's tax liens undiminished by any charges made by the company against the "cash surrender fund" after it received such notice. This policy is a straight life insurance contract with the usual non-forfeiture provisions which call for the automatic extension "from the date of default in Premium payments for a sum equal to the amount of the Policy and existing Dividend Additions, if any, less any indebtedness to the Company hereon." This non-forfeiture clause was honored by the company after receipt of notice of the federal tax liens when, on October 6, 1961, the taxpayer failed to pay the premium that was then due. Pursuant to this clause, the accumulated dividends have been exhausted by extending the insurance on the taxpayer and, since October 6, 1961, the available cash surrender value has been reduced by reason of its application in accordance with

the provisions of the contract to provide extended insurance for a term that the "Cash Surrender Value will purchase at Net Single Premium rates." The issue then is whether the company can permit the diminution of the "Cash Surrender Value", after actual notice of that lien, so as to impair the cash surrender value of the policy under the government's tax lien by applying against the fund charges for continued term insurance required by the non-forfeiture clause of the policy.

The company contends that the "cash surrender fund" does not become property or right to property [1] of the taxpayer within the meaning of § 3670 until the insured's right to compel the surrender of the cash value is exercised voluntarily or by foreclosure. The contention of the government is that service of notice of its lien upon the insurer operated to impose a duty upon the insurer to retain the property under its lien. It argues that since the company had been served with notice of the lien,[2] it should be held accountable for the specific amount of cash surrender value which became fixed as of October 6, 1961, when the taxpayer defaulted in the payment of a premium then due.

I find it unnecessary to re-plow the extensive legal and equitable grounds which the defendant insurer presents in support of its argument that no rights of the taxpayer under the policy can become fixed other than by surrender of the policy to it or by court decree, for all of these were thoroughly tilled recently by the Court of Appeals for the Third Circuit sitting en banc in United States v. Sullivan, 333 F.2d 100 (1964), affirming 203 F.Supp. 1 (W.D.Pa.1962).[3] The issues in that case concerned the fundamental problem of the means by which the commissioner can realize upon a policyholder's rights against an insurance company and the interrelated question of the proper measure of the commissioner's recovery. It was held in that case that insurers of delinquent taxpayers did not become obligated even by the commissioner's levy and demand to pay over to the government the cash surrender value of the policies as of that time, and that the levy did not effectuate revocation of the policy's automatic premium loan clauses.[4]

---

1. For a thorough spectrum of relationships dealing with rights to compel payment as "property" to which the federal tax lien may attach see Note, 77 Harv.L.Rev. 1485 (1964).

2. Formal notice was served on Connecticut Mutual Life Insurance Company January 29, 1957. There is no statutory provision for service of notice of the existence of a tax lien on the policy of an insured. No issue is raised as to the necessity for, or the adequacy or timeliness of such notice. Cf. Int.Rev.Code of 1954, § 6323(c), 68A Stat. 779, 26 U.S.C. § 6323(c) (1958), which requires notice only to bind a bona fide purchaser of "securities." And see United States v. Aetna Life Ins. Co., 46 F.Supp. 30, 34 (D.Conn.1942).

3. On the same day, April 10, 1964, the same court decided several other cases on the basis of the same opinion. The other cases are United States v. Wilson, 3 Cir., 333 F.2d 137, reversing and remanding, 195 F.Supp. 332 (D.N.J.1961); United States v. Kann, affirming per curiam, 203 F.Supp. 1 (W.D.Pa.1962);

United States v. Bankers Nat'l Life Ins. Co., 3 Cir., 333 F.2d 145, reversing and remanding per curiam, 198 F.Supp. 727 (D.N.J.1961).

4. In this case, the government seeks to draw a distinction between the automatic premium loans obtained by the insured in Sullivan, the proceeds of which were applied to premium payments, and the automatic operation of the non-forfeiture provision in this case. The reason for the possible difference this might have made to the court in Sullivan, 333 F.2d at 107, n. 15, does not exist here. In Sullivan, the non-forfeiture provision provided for an automatic conversion into *non-participating* extended term insurance. The non-forfeiture provisions in Mutual Benefit Life's policy provides: "The Paid-Up Policy or the Extended Insurance *will* participate in surplus and will be entitled to Cash Surrender Values equal to the reserve thereon at the time of surrender, less any indebtedness to the Company thereon." (Emphasis added.) The Mutual Benefit Life's policy contract disdains the "premium loan" technique to keep the policy alive.

■ ■ Either levy upon the insurance policy itself or judicial foreclosure would need to be pursued and perfected before payment could be compelled. It is a generally accepted view that since "[t]he federal tax lien is entirely statutory * * * its scope and effect are to be determined solely by the statute and the decisions interpreting it." MacKenzie v. United States, 109 F.2d 540 (9th Cir. 1940). See also In re Halprin, 280 F.2d 407, 409–410 (3d Cir. 1960); Fidelity & Deposit Co. of Maryland v. New York City Housing Authority, 241 F.2d 142, 144 (2d Cir. 1957). The mere attachment of the lien did not affect the nature of the encumbered property; it only attaches to property as it finds it. United States v. Sullivan, supra, 333 F.2d at 110; United States v. Aetna Life Ins. Co., 46 F.Supp. 30 (D.Conn. 1942). As expressed in Sullivan, supra, 333 F.2d at 122 "the policy remained fully operative with premiums becoming due and with options available to the insured in connection with the obligation to pay premiums."[5] Congress has provided specific means for enforcing a federal tax lien. Int.Rev.Code of 1954, § 7403, 68A Stat. 874, 26 U.S.C. § 7403 (1958). Especially where conflicting claims must be reconciled, the Supreme Court would seem to require that such means be employed: "Once a federal lien attaches to the insured's interest, of course, the Government, *in a proper action joining the appropriate parties,* can enforce the lien in the insured's lifetime and *thereby* recover the cash surrender value." United States v. Bess, 357 U.S. 51, 57, n. 2, 78 S.Ct. 1054, 1058, 2 L.Ed.2d 1135 (1958) (emphasis added).

■ The denial of the power to administratively so severely dislocate property relationships created by consensual agreement between the parties, cf. United States v. Brosnan, 363 U.S. 237, 242, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960), does not leave the commissioner helpless. He may proceed under § 7403 to enforce the government's lien. Once such an action is begun he may apply for an appropriate order to safeguard the "cash surrender values." This procedure has much to commend it. In addition to fully protecting the government's rights, it safeguards the interests of the beneficiaries, who as parties to the insurance contract as distinguished from competing lienors, cf. Fidelity & Deposit Co. of Maryland v. New York City Housing Authority, supra, 241 F.2d 142, may have a stake in the completion of the contract. That is strongly evidenced in this case by continuation of premium payments by Mrs. McWilliams. Cf. Aetna Cas. & Sur. Co. v. Port of New York Authority, 182 F.Supp. 671 (S.D.N.Y. 1960); First Nat'l Bank in Yonkers v. City of New York, 177 F.Supp. 175 (S.D.N.Y. 1959). And, it fixes the responsibility of the insurer so that it is not required to risk the uncertainties of several alternative claims such as are asserted here, namely that "cash value" is determined (1) as of the day the insurer receives notice of lien; (2) as of the date of demand; (3) as of the date suit is commenced; or (4) as of the date the policy would have lapsed because of non-payment of premiums.

■ ■ Regardless of which approach the United States takes, either that its lien attached to the taxpayer's rights in the policy or that it attached to the obligation of the insurance company to honor those rights, the contractual conditions upon those rights and obligations provided for by the consensual arrangement of the parties as embodied in the policy of insurance continued to be operative until the government became the owner of the policy by voluntary assignment or pursuant to a decree in a proceeding to enforce its lien under § 7403. The lien did not have the effect of assigning the policy; and notice of the lien did not have the effect of a demand for payment of the cash surrender value.

---

5. Although the quoted portion is found in the dissenting opinion of Judge Hastie he specifically noted his agreement with the majority on this point.

The argument that commencement of the suit was effective to fix the time when the government's right to demand payment was exercised was rejected by the court in Sullivan as being without merit. I am of the same opinion. The insurance contract obligated the insurer to keep the insurance protection alive whether premiums were paid or not. If some one continued to pay premiums, the "cash value" would be increased; if they were not continued, it would be decreased. The government recognizes that it could have applied for a blanket restraining order barring all parties from taking any steps to affect the status quo of the rights under the policy. That is what it should have done at an earlier time if it wanted the various interests fixed as of that time.

### Conclusions

There is no genuine issue as to any material fact. The lien of the United States upon all property or rights to property of John D. McWilliams by virtue of the tax assessments described in the complaint is superior to any rights claimed by Ethel McWilliams and Elizabeth McWilliams in those insurance policies. It is not necessary to appoint a receiver or decree a sale of the insurance policies, for nothing more can be realized by a sale than by their surrender to the insurance companies.

1. The United States is entitled to recover the unpaid balance of the withholding and F.I.C.A. taxes for the third and fourth quarters of 1947 and interest and lien fees thereon against John D. McWilliams.

2. The prayer of the United States for the foreclosure of its lien upon the aforesaid policies should be granted.

3. The United States is entitled to a judgment decreeing that each of the defendant insurance companies, respectively, pay to the United States the value of the respective interests, property and rights to property of John D. McWilliams in and to the aforesaid policies.

4. After the sum representing the value of those interests has been applied against the taxes, penalties and interest assessed against John D. McWilliams, the United States shall be entitled to a judgment against McWilliams for such taxes as thereafter may remain due against him.

5. The defendant insurance companies, Mr. McWilliams, and the United States shall agree by not later than July 30, 1964, upon the value of the interest of Mr. McWilliams in each of said policies as of August 20, 1964.

6. Notice of the respective values agreed upon shall be served upon each of the other parties by the government on or before August 10, 1964. In default of payment of the amounts so determined to the United States on or before August 20, 1964, the lien of the United States may be enforced, and John D. McWilliams and all persons claiming under, by or through him may be forever barred and foreclosed of all equity or interest in and to said policies.

7. Judgment shall be held in abeyance until September 1, 1964.

8. The government is directed to prepare and submit a decree showing the effect, in dollars and cents, of the decision rendered by this court by September 1, 1964.

9. The decree shall provide that payment by the respective insurers of the agreed values shall have the effect of a surrender of the policies to the respective insurance companies, and a cancellation and termination of any and all rights which John D. McWilliams, Ethel McWilliams and Elizabeth McWilliams have therein against the insurance companies.

### ON MOTION TO REARGUE

After the court entered a ruling in favor of the government on its motion for summary judgment against the individual defendants, they moved for reargument. Nothing new was offered. The argument made is that Mrs. McWilliams' possession of the policies in which she was named as beneficiary before they were formally assigned to her, coupled with her deposition testimony that she

 

had sometimes paid some of the premiums is sufficient to permit a trier to infer that she had acquired a right to those policies which will defeat a later government tax lien. Looking back at her deposition testimony, it is clear that she did not come into possession of the policies in connection with any express agreement with her husband that she was to become the owner of them. In fact, he later took out a policy loan on at least one of them. Cf. Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 605–07, 68 S.Ct. 715, 92 L.Ed. 898 (1947). The second thing that strikes one is that there is no way of ascertaining what proportion of the premiums were paid by her and what by him. Although pressed to reveal that information, no records were offered. None of the liberal discovery procedures were resorted to in order to obtain records to support her suggestion that funds to pay the premiums were withdrawn from her several bank accounts. Not even an estimate of the amount was assayed. Nor is her position aided by the circumstances under which she made whatever payments she did: Her "husband didn't have the money;" she "didn't want to drop the policies * * * for protection of myself;" and she "always thought that he would pay those back." Her purpose to maintain protection for herself in the event of her husband's death was realized until now to the extent of "proceeds" less "surrender value," cf. United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1957), and may be fulfilled for the future if the defendants pay over to the government the cash surrender value of the policies.

To argue that all that is needed in order to overcome the government's tax lien on the cash value of those policies is to inject evidence of a wholly speculative amount of premium payments made by her and a nebulous and ambiguous belief that there was an intent to transfer complete ownership or a security interest in the policies disregards the rationale underlying the use of summary judgment. See the opinion of Judge Kaufman in Dressler v. M. V. Sandpiper, 331 F.2d 130 (2d Cir. 1964).

The motion to re-argue is denied.

Judgment will enter.